JAMES A. PATTEN
PATTEN, PETERMAN,
BEKKEDAHL & GREEN,
       PLLC
Suite 300, The Fratt Building
2817 Second Avenue North
Billings, MT 59101-2041
Telephone:  (406) 252-8500
Facsimile:  (406) 294-9500
email:  apatten@ppbglaw.com

Attorneys for Plaintiffs
INDIGENOUS
ENVIRONMENTAL
NETWORK and NORTH
COAST RIVERS ALLIANCE

STEPHAN C. VOLKER (Pro hac vice)
ALEXIS E. KRIEG (Pro hac vice)
STEPHANIE L. CLARKE (Pro hac vice)
DANIEL P. GARRETT-STEINMAN (Pro
       hac vice)
JAMEY M.B. VOLKER (Pro hac vice)
LAW OFFICES OF STEPHAN C. VOLKER
1633 University Avenue
Berkeley, California 94703-1424
Telephone:  (510) 496-0600
Facsimile:  (510) 845-1255
email:        svolker@volkerlaw.com
                  akrieg@volkerlaw.com
                  sclarke@volkerlaw.com
                  dgarrett@volkerlaw.com
                  jvolker@volkerlaw.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVERS ALLIANCE, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF STATE, et al., <br><br> Federal Defendants, | Civ. No. 4:17-cv-00029-BMM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AND TRANSCANADA'S MOTION TO DISMISS** <br><br> Hearing:  August 31, 2017 <br> Time:        1:30 p.m. <br><br> Judge:     Hon. Brian M. Morris |

and                                        )
                                           )
                                           )
TRANSCANADA KEYSTONE PIPELINE              )
and TRANSCANADA CORPORATION,               )
                                           )
                    Defendant-Intervenors. )
_____   )

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.      PLAINTIFFS CHALLENGE A FINAL AGENCY ACTION,
AS REQUIRED BY THE APA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.  THE APA WAIVES THE FEDERAL GOVERNMENT'S
SOVEREIGN IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.  PLAINTIFFS CHALLENGE A FINAL AGENCY ACTION. . . . . 16

           1.      Plaintiffs Challenge a Final Action. . . . . . . . . . . . . . . . . . 16

           2.      Plaintiffs Challenge an Agency, Not a Presidential,
Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                a.      Presidential Actions. . . . . . . . . . . . . . . . . . . . . . . . . 19

                b.      The Project Approvals Are Not Presidential
Actions Because the President Had No Role
in the Final Permitting Decisions. . . . . . . . . . . . . . . 22

                c.      The Project Approvals Are Not Presidential
Actions Because Congress Required That
the State Department Comply with NEPA
and Other Environmental Protection
Statutes Before Taking Action. . . . . . . . . . . . . . . . . 24

                d.      The Pipeline Cases Are Unavailing. . . . . . . . . . . . . 27

      C.  FEDERAL DEFENDANTS' ALTERNATE CLAIM THAT
THEIR ACTION WAS COMMITTED TO AGENCY
DISCRETION BY LAW IS UNSUPPORTABLE.. . . . . . . . . . . . . 29

      D.  PLAINTIFFS' CLAIMS ARE REDRESSABLE. . . . . . . . . . . . . . 33

**II.    PLAINTIFFS' CHALLENGE TO THE BIOLOGICAL
    OPINION CANNOT BE DISMISSED** .. . . . . . . . . . . . . . . . . . . . . . . . . 35

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner*
    387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Anza v. Ideal Steel Supply Corp.*
    547 U.S. 451 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*ASSE International, Inc. v. Kerry*
    803 F.3d 1059 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30

*Baker v. Carr*
    369 U.S. 186 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Bennett v. Spear*
    520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17-18

*Border Power Plant Working Group v. Department of Energy*
    260 F.Supp.2d 997 (S.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Califano v. Sanders*
    430 U.S. 99 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Canyon County v. Syngenta Seeds, Inc.*
    519 F.3d 969 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Citizens to Preserve Overton Park v. Volpe*
    401 U.S. 402 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30, 33

*City of Santa Clara v. Andrus*
    572 F.2d 660 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Conley v. Gibson*
    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Dalton v. Specter*
    511 U.S. 462 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Detroit International Bridge Company v. Government of Canada*
    189 F.Supp.3d 85 (D.D.C. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Franklin v. Massachusetts*
    505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 26

*Friedman Bros. Inv. Co. v. Lewis*
    676 F.2d 1317 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gilligan v. Jamco Development Corp.*
    108 F.3d 246 (9th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hall v. Norton*
    266 F.3d 969 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Heckler v. Chaney*
    470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30

*Japan Whaling Association v. American Cetacean Society*
    478 U.S. 221 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

*Jensen v. National Marine Fisheries Service*
    512 F.2d 1189 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mendoza v. Zirkle Fruit Co.*
    301 F.3d 1163 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Monroe County Conservation Council v. Volpe*
    472 F.2d 693 (2nd Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Natural Resources Defense Council v. U.S. Department of State*
    658 F.Supp.2d 105 (D.D.C 2009). . . . . . . . . . . . . . . . . . . . . . 20, 23, 27, 28

*No Oilport! v. Carter*
    520 F.Supp. 334 (W.D. Wash. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Ocean Advocates v. U.S. Army Corps of Engineers*
    402 F.3d 846 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 34

*ONDA v. U.S. Forest Service*
      465 F.3d 977 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Oregon Natural Desert Association v. BLM*
      625 F.3d 1092 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ouachita Watch League v. Jacobs*
      463 F.3d 1163 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Parola v. Weinberger*
      848 F.2d 956 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Protect Our Communities Foundation v. Chu*
      2014 WL 1289444, *2 (S.D.Cal. No. 3:12-cv-03062-L-JLB;
      March 27, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rattlesnake Coalition v. EPA*
      509 F.3d 1095 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*RESTORE: The North Woods v. U.S.D.A.*
      968 F.Supp. 168 (D.Vt. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-32

*Sierra Club v. Clinton*
      689 F.Supp.2d 1147 (D.Minn. 2010). . . . . . . . . . . . . . . . . . . . . . 22, 29, 34

*Sisseton-Wahpeton Oyate v. U.S. Department of State*
      659 F.Supp.2d 1071 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Southwest Williamson County Community Association v. Slater*
      173 F.3d 1033 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*White Earth Nation v. Kerry*
      2015 WL 8483278 (Civ. No. 14-4726; Dec. 9, 2015). . . . . . . . . . . . . . . . 29

*Wolfe v. Strankman*
      392 F.3d 358 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Youngstown Sheet & Tube Co. v. Sawyer*
      343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

**CONSTITUTION**

United States Constitution, Article 1
      § 8, cl. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**STATUTES**

United States Code, Title 5
      §§ 701-706 ("APA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
      § 701(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
      § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 31
      § 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
      § 706(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26
      § 706(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      §§ 706(2)(A)-(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States Code, Title 16
      §§ 1531 *et seq.* ("ESA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 35

United States Code, Title 42
      §§ 4321 *et seq.* ("NEPA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
      § 4332(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 30

**REGULATIONS**

Code of Federal Regulations, Title 22
      §§ 161.1-161.12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30
      § 161.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 30, 31
      § 161.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 30, 31
      § 161.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25
      § 161.7(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

**RULES**

Federal Rules of Civil Procedure
      Rule 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

**OTHER AUTHORITIES**

Executive Order 13337 of April 30, 2004
      69 Fed.Reg. 25299 (May 5, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Memorandum of January 24, 2017: Construction of the Keystone XL Pipeline
      82 Fed.Reg. 8663 (Jan. 30, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Presidential Permit of March 23, 2017
      82 Fed.Reg. 16467 (Apr. 4, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Denis Binder, *The Spending Clause As a Positive Source of*
      *Environmental Protection: A Primer*, 4 Chap.L.Rev. 147 (2001). . . . .  21-22

# INTRODUCTION

Plaintiffs Indigenous Environmental Network and North Coast Rivers Alliance (collectively, "plaintiffs" or "IEN") brought this action for declaratory and injunctive relief against defendants United States Department of State ("State"), Under Secretary of State Thomas A. Shannon, United States Fish and Wildlife Service ("FWS"), Acting Director of the United States Fish and Wildlife Service James Kurth, and Secretary of the Interior Ryan Zinke (collectively, "Federal Defendants") to set aside their erroneous approval of a Presidential Permit for the Keystone XL Pipeline ("Project").  On March 23, 2017, Federal Defendants issued a Record of Decision and National Interest Determination ("ROD/NID") approving the Presidential Permit for the Project.  ECF 44-6 (ROD/NID; Exhibit 4 to Federal Defendants' motion); ECF 44-8 (Presidential Permit; Exhibit 6 to Federal Defendants' motion).  TransCanada Corporation, *et al.* ("TransCanada"; collectively with Federal Defendants, "defendants"), successfully moved to intervene in this case on behalf of Federal Defendants. ECF 37 at 2.

Defendants argue in their motions to dismiss that plaintiffs fail to state a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. sections 701-706, because the President is not an agency.  Federal Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("FDMPA") at 8-14; TransCanada's Memorandum in Support of Motion to Dismiss ("TCMPA") at 15-18.  As explained more fully below, this argument lacks merit because the

ROD/NID was approved by State, not the President.  Defendants further argue that approval of a presidential permit is unreviewable under the APA because it is discretionary (FDMPA 15-20; TCMPA 17), but State's compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. section 4321 *et seq.*, is mandatory, not discretionary, under its own regulations.  *See* 22 C.F.R. §§ 161.3, 161.5.  Finally, Federal Defendants contend that plaintiffs' injuries are not redressable (FDMPA 19-20), but they can be easily redressed by this Court ordering adequate environmental review.  *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005).

Defendants further argue that plaintiffs' allegations about their Endangered Species Act claim are inadequate.  FDMPA 21-24; TCMPA 18-21.  Plaintiffs are amending their complaint with additional details.[1]

## STANDARD OF REVIEW

Defendants' motions to dismiss raise three primary arguments.  Each argument is reviewed under the standard applicable to motions to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6).

First, defendants argue that plaintiffs' claims are not cognizable under the APA because the president is supposedly not an agency and because the issuance of a presidential permit is allegedly committed to agency discretion.  FDMPA 6-19; TCMPA 12-18.  Because defendants question whether the APA provides a

---

[1]  Plaintiffs are also withdrawing their Migratory Bird Treaty Act and Bald and Golden Eagle Protection Act claims.

cause of action here, defendants' argument is properly viewed as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim, not a Fed.R.Civ.P. 12(b)(1) attack on subject-matter jurisdiction, as a District Court judge recently concluded in indistinguishable circumstances. *Protect Our Communities Foundation v. Chu*, 2014 WL 1289444, *2 ("*Chu*") (S.D.Cal. No. 3:12-cv-03062-L-JLB; March 27, 2014) ("The gravamen of Defendants' position is not that Plaintiffs do not present federal claims, but instead whether those claims are enforceable against the DOE when it is acting on behalf of the President pursuant to [an] Executive Order").

Second, Federal Defendants argue that plaintiffs lack standing to pursue their second cause of action – that FWS' adoption of the Biological Opinion was unlawful. FDMPA 21-24. Because defendants' arguments "accept[] the truth of [IEN's] allegations but assert[] that they are insufficient on their face to" confer standing, this Court likewise resolves this challenge "as it would a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2014) ("defendants argue that the allegations in Wolfe's complaint are insufficient on their face to establish subject matter jurisdiction. . . . We assume Wolfe's allegations to be true and draw all reasonable inferences in his favor").

Third, TransCanada argues that plaintiffs' second cause of action "fails to state a claim for which relief can be granted" because its allegations are unduly vague. TCMPA18-21 (capitalization altered). TransCanada concedes that this argument is made pursuant to Fed.R.Civ.P. 12(b)(6). *Id.*

Under Fed.R.Civ.P. 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) ("we accept as true the factual allegations in the [] complaint"). "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Granting a motion to dismiss is only appropriate "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (quoting *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1167 (9th Cir. 2002)).

## ARGUMENT

## I.   PLAINTIFFS CHALLENGE A FINAL AGENCY ACTION, AS REQUIRED BY THE APA

Defendants argue this court lacks jurisdiction over plaintiffs' claims because the waiver of sovereign immunity in section 702 of the APA is limited to final agency actions and State's approval of the Presidential Permit supposedly does not qualify. FDMPA 6-14; TCMPA 12-18. Federal Defendants further argue that approval of the Presidential Permit is unreviewable because it is committed to agency discretion by law. FDMPA 15-20. Lastly, they contend that plaintiffs lack standing because their injuries are not redressable. FDMPA 19-20. These contentions lack merit.

As set forth in the first sub-section below, defendants do not dispute that

plaintiffs' claims are made pursuant to the APA or that the APA contains a waiver of sovereign immunity for challenges to final agency actions.

The second sub-section explains why State's approval of the Presidential Permit, and ROD/NID are "final," as required, because they represent the culmination of the decisionmaking process and legal consequences flow from these approvals. That section also demonstrates that plaintiffs are challenging an "agency action" – rather than an action of the President – for two reasons. First, the decision to issue the Presidential Permit is made by State, not the President, and the President does not have the authority to personally override State's decision. Second, Congress has exercised its authority to regulate the Project through its enactment of NEPA.

As discussed in the third sub-section, issuance of the Presidential Permit is not unreviewable on the basis that it is committed to agency discretion. NEPA is not "drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe* ("*Overton Park*"), 401 U.S. 402, 410 (1971); *ASSE International, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015). NEPA and State's implementing regulations provide an amply "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); 22 C.F.R. §§ 161.1-161.12.

Finally, as discussed in the last sub-section below, because plaintiffs' NEPA claims are procedural, their injuries are redressable through adequate NEPA review. *Ocean Advocates*, 402 F.3d at 860.

- 14 -

### A.  THE APA WAIVES THE FEDERAL GOVERNMENT'S SOVEREIGN IMMUNITY

Defendants do not dispute either that plaintiffs' claims are made pursuant to the APA or that the APA contains "a waiver of sovereign immunity in suits seeking judicial review of agency actions where judicial review has not been expressly authorized by statute." *Parola v. Weinberger*, 848 F.2d 956, 958 (9th Cir. 1988); FDMPA 6-7 (plaintiffs' claims must proceed "in accord with the right of action and the waiver of sovereign immunity provided in the APA"); TCMPA 15 (the "APA authorizes review . . . of 'final agency action'").

TransCanada argues that plaintiffs' supposed "failure to articulate a relevant waiver of sovereign immunity acts as an additional, independent barrier to establishing subject matter jurisdiction in this Court." TCMPA 15.  TransCanada fails to explain its argument; as noted, the APA waives the federal government's sovereign immunity.  *Parola*, 848 F.2d at 958.  Plaintiffs expressly relied upon the APA in their jurisdictional allegations and in their First Cause of Action.  ECF 1 (Complaint) at 4 ¶ 8 ("This Court has jurisdiction . . . under the Administrative Procedure Act"), 8 ¶ 33 ("By approving the Project without complying with NEPA, [State] failed to proceed in accordance with law in violation of the APA, 5 U.S.C. § 706(2)(A) and (D)").

TransCanada does claim that the APA's waiver of sovereign immunity is not "applicable to Plaintiffs' claims" for some unstated reason.  TCMPA 14.  If TransCanada intended to argue that the APA's waiver of sovereign immunity is inapplicable because approval of a Presidential Permit is not an "agency action," it

- 15 -

is mistaken, as discussed below; approval of a Presidential Permit *is* an agency action.

## B.  PLAINTIFFS CHALLENGE A FINAL AGENCY ACTION

### 1.      Plaintiffs Challenge a Final Action

To qualify for review under the APA, agency action must be considered "final" in the sense that it (1) "mark[s] the consummation of the agency's decisionmaking process" rather than being "tentative or interlocutory in nature"; and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (quotation marks and citations omitted).  "The finality element must be interpreted in a pragmatic and flexible manner." *ONDA v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006) (quotation omitted).  Defendants do not dispute, and thereby concede, that State's issuance of the Permit was a "final" action.

With respect to the first requirement, State's issuance of the ROD/NID was the final point in, and thus "consummat[ed]," State's review of TransCanada's Presidential Permit application.  *Id.*; FDMPA 5; TCMPA 8-9.  Indeed, the discussions of the Permit's history in defendants' briefs conclude with the issuance of the ROD/NID.  *Id.*  Similarly, approval of the ROD/NID is an action "from which legal consequences will flow" because it enables TransCanada to begin Project construction once other related approvals are obtained.  *Bennett*, 520 U.S. at 178.  The Presidential Permit expressly states that it "hereby grant[s] permission . . . to TransCanada . . . to construct, connect, operate, and maintain

- 16 -

pipeline facilities. . . ."  ECF 44-8 (Presidential Permit; Exhibit 4 to Federal

Defendants' motion) at 2.

Federal Defendants argue that "an EIS standing alone is not a final agency

action reviewable under the APA."  FDMPA 13-14.  But Federal Defendants

misrepresent the case they cite, *Rattlesnake Coalition v. EPA*, 509 F.3d 1095,

1104 (9th Cir. 1997).  That case actually stands for the opposite proposition of

what defendants claim; it holds that the challenged action was not final because

the agency still could have "decide[d] to issue an EA and a FONSI or an EIS,"

which *would* render the action final.  *Id.*  The court further clarified that "the

issuance of an EA and FONSI . . . concludes the agency's procedural inquiry into

the environmental impact of a proposed project and therefore constitutes a final

agency action, regardless of whether the agency has decided to fund the project."[2]

*Id.* (citing *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir. 1982).

Regardless, Federal Defendants' argument is irrelevant, because State did not

issue "an EIS standing alone."  Instead, it issued *an ROD/NID and Presidential*

*Permit based upon an EIS*.  *See, e.g.,* ECF 44-6 (ROD/NID; Exhibit 4 to Federal

Defendants' motion) at 10-26 (describing SEIS).

Because State's issuance of the ROD/NID marks the conclusion of its

review and has legal consequences, it is a "final" action under the APA.  *Bennett*,

---

[2] Federal Defendants' argument also falsely implies that the decision in *Chu*, 2014
WL 1289444, involved "an EIS standing alone."  FDMPA at 13.  *Chu*, like this
case, involved a challenge to a *Presidential Permit issued pursuant to an EIS*.
2014 WL 1289444 at *2.

520 U.S. at 178.

### 2.    Plaintiffs Challenge an Agency, Not a Presidential, Action

State recognizes in its own NEPA regulations that issuing a presidential permit – like the permit here – is a "major Departmental action" subject to Congress' mandates in NEPA.  22 C.F.R. §§ 161.7 (quote), 161.7(c)(1) ("Issuance of permits for construction of international bridges and pipeline[s]" are actions "normally requiring [at least] environmental assessments").  And, indeed, the agency prepared an EIS for the Keystone XL project, culminating in a Final Supplemental EIS ("FSEIS") and subsequent ROD/NID.  ECF 44-6 (FDMPA, Exhibit 4).  Furthermore, both State and the President acknowledged that the FSEIS was prepared and the presidential permit was issued *pursuant to NEPA*. ECF 44-8 (FDMPA, Exhibit 6) (Presidential Permit, stating it was issued after "having considered the environmental effects of the proposed action consistent with the National Environmental Policy Act of 1969"); 82 Fed. Reg. 8663 (January 24, 2017 Presidential Memorandum, stating: "To the maximum extent permitted by law, the [FSEIS] issued by the Department of State in January 2014 regarding the Keystone XL Pipeline . . . shall be considered by the Secretary of State to satisfy . . . (A) all applicable requirements of the National Environmental Policy Act of 1969").

Yet now, defendants contend this Court is powerless to decide whether State actually *complied* with NEPA's mandates, because the agency's "Departmental action[s]" were not actually "agency action" for purposes of the

APA.  Instead, they claim that the Presidential Permit, ROD/NID and FSEIS were
"Presidential actions" not subject to judicial review under the APA, because "the
Secretary's delegated authority to issue presidential permits for cross-border
activities derives *solely* from the *President's* authority."  FDMPA 8 (quote;
emphasis added); TCMPA 12.  Wrong.  Defendants not only ignore Congress'
authority over foreign and domestic commerce and the major role Congress plays
in regulating these types of projects, including through NEPA, but also the
President's lack of decisionmaking power with respect to the Keystone XL Project
specifically.

By approving and issuing the Presidential Permit, ROD/NID and FSEIS for
the Project, State took "agency action" subject to judicial review under the APA.

### a.  Presidential Actions

It is indeed "well-settled" that the "actions of the President . . . are not
reviewable under the APA because . . . the President is not an 'agency.'"  TCMPA
15 (first quote); *Dalton v. Specter*, 511 U.S. 462 (1994) (second quote).  But that
raises the question of what *constitutes* a "presidential action."  Contrary to
defendants' implications, not every action by the President or his delegee
constitutes a "presidential action" unreviewable under the APA.

Whether an action taken by the President, or a delegee agency or official,
constitutes a "presidential action" unreviewable under the APA boils down to how
much discretionary authority the President possesses to take or direct the action.
In determining whether an action taken by an agency or official constitutes

"presidential action," the courts consider two factors: (1) "[w]hether the President carries out the final action himself and the manner in which he does so," and (2) "whether 'the President's authority to direct the [agency] in making policy judgments' is curtailed in any way," for example by Congress. *Natural Resources Defense Council v. U.S. Department of State* ("*NRDC v. State*"), 658 F.Supp.2d 105, 111 (D.D.C 2009) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 799 (1992)).

Where the President himself takes the "final act," that indicates that "his duties are not merely ceremonial or ministerial," and thus is generally "presidential action" unreviewable under the APA. *Franklin*, 505 U.S. at 800 (quotes); *Dalton*, 511 U.S. at 469-470. That is not the case here, as discussed in the next section; the President *relinquished* his authority to take the "final act" on the Project in his Memorandum dated January 24, 2017.

Where an agency, or official besides the President, takes the "final act," the action may still be "presidential" for purposes of the APA if (1) the authority and restrictions to act are conferred to the agency primarily under the President's own authority ("discretionary authority vested in the President by law," either the Constitution or statute), rather than by Congress, and (2) "'the President's authority to direct the [agency] in making policy judgments' is [not] curtailed in any way." *NRDC v. State*, 658 F.Supp.2d at 111.

For example, in *Detroit International Bridge Company v. Government of Canada* ("*DIBC*"), the court held that State's approval of a bridge between Canada

and the U.S., under delegation from the President, was unreviewable presidential action because it satisfied both criteria.  189 F.Supp.3d 85, 96-105 (D.D.C. 2016). First, the "President's authority over the construction of international bridges" was "'at its maximum, for it includes all that he possesses in his own right'" under the Constitution (foreign affairs), plus a statutory delegation to the President pursuant to Congress' own constitutional powers in the field (foreign and domestic commerce).  *Id.* at 98.  And second, the President "chose to retain ultimate authority" over bridge approval where "any interagency dispute" arose, which "signal[ed] his belief that the issuance of presidential permits is ultimately a presidential action."  *Id.* at 103 (internal quotations and citation omitted).  Here, unlike in *DIBC*, Congress has not statutorily delegated its powers to the President, and as discussed more fully below, the President has retained no ultimate approval authority.

By contrast, where the President's – or agency delegee's – decisionmaking authority is constrained by Congress, the agency's action is likely an "agency action" *reviewable* under the APA, especially where the President also relinquishes his "ultimate authority" over the agency decision at issue.  As relevant here, NEPA is a prime example of how Congress constrains agency decisions in the realm of foreign and domestic commerce, even where the President also possesses some inherent authority over the actions pursuant to his constitutional powers over foreign affairs.  Denis Binder, *The Spending Clause As a Positive Source of Environmental Protection: A Primer*, 4 Chap.L.Rev. 147,

- 21 -

147-148 (2001).

In cases similarly involving the issuance of a Presidential Permit for cross-border facilities, multiple courts have held that the agencies' related actions under NEPA were "final agency action[s] reviewable . . . under the APA," either by themselves or in conjunction with the Presidential Permits. *Sierra Club v. Clinton*, 689 F.Supp.2d 1147, 1157 (D.Minn. 2010) (quote; case involved State approval via presidential permit under EO 13337 of another U.S.-Canada oil pipeline); *Border Power Plant Working Group v. Department of Energy*, 260 F.Supp.2d 997, 1018 (S.D. Cal. 2003) ("An agency's decision not to prepare an EIS under NEPA" prior to issuing a presidential permit "is a final administrative decision reviewable under the [APA]"); *Chu*, 2014 WL 1289444 at *5 ("it is clear that this Court has been tasked to review agency actions such as the issuance of a Presidential permit by an agency, based on its own EIS that was created to comply with NEPA").

Here, State's Project approvals, including the Presidential Permit and the ROD/NID, are final agency actions reviewable under the APA because (1) the President relinquished his "ultimate authority" over the Project approval, and (2) Congress, through NEPA and other environmental statutes, curtailed State's discretionary power to approve the Project.

> **b.**    **The Project Approvals Are Not Presidential Actions Because the President Had No Role in the Final Permitting Decisions**

Though Executive Order 13337 gives the President broad authority to render a final decision on Presidential Permits, the President himself relinquished

that authority in the issuance of his Memorandum dated January 24, 2017.

Executive Order 13337 gives nearly plenary authority to State to decide whether or not to issue a Presidential Permit "for the construction, connection, operation, or maintenance, at the borders of the United States, of facilities for the exportation or importation of petroleum, petroleum products, coal, or other fuels to or from a foreign country."  69 Fed. Reg. 25299.  However, it requires State to consult with various entities and individuals prior to issuing – or denying – a Presidential Permit, and allows them to object to State's proposed decision.  69 Fed. Reg. 25300 (section 1(i)).  And if the dispute cannot be resolved, section 1(i) of EO 13337 requires that State "refer the application . . . to the President for consideration and a final decision."  *Id.*  The "President [thus] chose to retain ultimate authority to settle any interagency dispute" as a referee under section 1(i) of EO 13337, which "signal[ed] his belief that the issuance of presidential permits is ultimately a presidential action."  *NRDC v. State*, 658 F.Supp.2d at 111.

Here, by contrast, the President *expressly relinquished* his referral and decisionmaking authority through his January 24, 2017 Memorandum on the "Construction of the Keystone XL Pipeline."  In that memorandum, the President directed that the "agency notification and fifteen-day delay requirements of sections 1(g), 1(h) and 1(i) of Executive Order 13337 are *hereby waived*," thus extinguishing his only avenue to review State's permitting decision and the "presidential" nature of the permit State ultimately issued.  82 Fed. Reg. 8663 (emphasis added).  This *express waiver* disposes of defendants' argument.

> c.   **The Project Approvals Are Not Presidential Actions Because Congress Required That the State Department Comply with NEPA and Other Environmental Protection Statutes Before Taking Action**

"[I]t is 'error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance.'" *Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221, 229-30 (1986) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1969)).  Yet that is exactly the fatal error that defendants make here.  They claim that the Presidential Permit, ROD/NID and FSEIS were "Presidential actions" not subject to judicial review under the APA, because "the Secretary's delegated authority to issue presidential permits for cross-border activities derives *solely* from the *President's* [constitutional] authority" over foreign affairs.  FDMPA 8 (quote; emphasis added); TCMPA 12-13.  Not so.

Rather than occupied solely by the President, the field of cross-border facilities is a "zone of twilight in which he and Congress . . . have concurrent authority."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 636 (1952).  While the President has constitutional authority over foreign affairs, Congress has constitutional authority over both foreign and domestic commerce.  U.S. Const. art. I, § 8, cl. 3 (Congress has authority to "regulate Commerce with foreign nations, and among the several States, and with the Indian Tribes").  And Congress has not shied away from exercising that power to condition *all* "major Federal actions," including the permitting of cross-border permitting, on compliance with NEPA.  42 U.S.C. § 4332(2)(C).  Nor is NEPA the only

Congressional regulation with which the State Department must comply before issuing permits like the Presidential Permit here.  Congress further restricted agency discretion through the Endangered Species Act, 16 U.S.C. section 1531 *et seq.*, and other environmental protection laws.

Indeed, as discussed, State acknowledges that it is subject to those Congressional requirements.  For example, State recognizes in its own NEPA regulations that issuing a presidential permit – like the permit here – is a "major Departmental action" subject to Congress' mandates in NEPA.  22 C.F.R. §§ 161.7 (quote), 161.7(c)(1).  Even the President admitted in his January 24, 2017 Memorandum that State was required to comply with both NEPA and the ESA before issuing the Presidential Permit for the Project:

> To the maximum extent permitted by law, the [FSEIS] issued by the Department of State in January 2014 regarding the Keystone XL Pipeline . . . and the environmental analysis, consultation, and review described in that document . . . shall be considered by the Secretary of State to satisfy . . . (A) all applicable requirements of the National Environmental Policy Act of 1969," and (B) any other provision of law that requires executive department consultation or review (including the consultation or review required under section 7(a) of the Endangered Species Act of 1973).

82 Fed. Reg. 8663.

Furthermore, State's reviews under NEPA and the ESA were inextricably intertwined with its decisionmaking process leading up to and including its ultimate action in issuing the Presidential Permit for the Project.  As the permit itself recites, State only issued the permit after "having considered the environmental effects of the proposed action consistent with [NEPA], Section 7 of

- 25 -

the Endangered Species Act of 1973 . . ., and other statutes relating to environmental concerns," as well as "the National Historic Preservation Act of 1966."  FDMPA, Exhibit 6 (Dkt. 44-8).

Because Congress so substantially "curtail[ed]" the President's and State's discretionary authority over permitting the Keystone XL Pipeline Project, State's Project approvals – including the Presidential Permit, the ROD/NID and FSEIS – are *agency* actions subject to APA review, not unreviewable presidential actions. *Franklin*, 505 U.S. at 799.  As the *Chu* Court concluded under similar circumstances, "[i]n light of the foregoing, it is clear that this Court has been tasked to review agency actions such as the issuance of a Presidential permit by an agency, based on its own EIS that was created to comply with NEPA."  2014 WL 1289444, at *6.

Moreover, even if the Presidential Permit here remained a "presidential action" despite Congress' statutory constraints, State's ROD/NID and FSEIS constitute final agency actions independently reviewable under the APA, as discussed above.  *Oregon Natural Desert Association v. BLM*, 625 F.3d 1092, 1118 (9th Cir. 2008) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action, reviewable under § 706(2)(A)"); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) ("It is well settled that a 'final EIS or the record of decision issued thereon constitutes final agency action;'" quoting *Southwest Williamson County Community Association v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999)).

Accordingly, the Presidential Permit, ROD/NID and FSEIS approved by State are all final agency actions subject to the APA and this Court's jurisdiction thereunder.

### d.    The Pipeline Cases Are Unavailing

Rather than an insurmountable and "unanimous body of precedent blocking [plaintiffs'] access to the Federal Courthouse," the three pipeline cases on which defendants rely are doubly unavailing.  TCMPA 13.  First, as out-of-circuit district court cases, none of them are binding precedent for courts in the Ninth Circuit. Second, their holdings are fundamentally flawed and factually distinguishable.

In the first pipeline case, *NRDC v. State*, the court wrongly held that the "President's authority to issue permits for cross-border pipelines" under EO 13337 "is completely discretionary and is not subject to any statutory limitation, including NEPA's impact statement requirement."  658 F.Supp.2d at 113.  The court's holding relied on two erroneous – and interrelated – premises: (1) that the Secretary of State's power to authorize a cross-border oil pipeline derived solely from the "President's inherent constitutional authority over foreign affairs;" and (2) that "[n]o statute curtails the President's authority to direct whether the State Department . . . issues a presidential permit."  *Id.* at 109 (first quote), 111 (second quote).

The first premise is wrong because, as discussed above, the President does not enjoy plenary authority over cross-border commercial facilities.  It shares that power with Congress, which has constitutional authority over foreign and

domestic commerce. And Congress has not stood idly by and let the President assume full authority over foreign and domestic commerce. To the contrary, and refuting the second premise, Congress has substantially curtailed executive power in that realm through environmental protection and review statutes like NEPA.

Furthermore, *NRDC v. State* is distinguishable because the President had a significantly greater role in the permitting decision there (approval of the original Keystone pipeline) than he did here, in the approval of the Keystone XL Pipeline. There, the court emphasized that the "President chose to retain ultimate authority to settle any interagency dispute" as a referee under section 1(i) of EO 13337, which "signal[ed] his belief that the issuance of presidential permits is ultimately a presidential action." *NRDC v. State*, 658 F.Supp.2d at 111. Here, by contrast, as discussed above the President *expressly relinquished* his referral and decisionmaking authority in his January 24, 2017, Memorandum. 82 Fed. Reg. 8663.

The second pipeline case, *Sisseton-Wahpeton Oyate v. U.S. Department of State*, which involved the same Presidential Permit and other State approvals for the original Keystone pipeline as in *NRDC v. State*, is similarly distinguishable. 659 F.Supp.2d 1071 (2009). As in *NRDC v. State*, the *Sisseton-Wahpeton Oyate* court held that plaintiffs' NEPA claims were unreviewable under the APA because the approval "actions taken pursuant to Executive Order 13337 [were] presidential in nature." *Id.* at 1082. But, the court rested its "presidential action" determination entirely on the fact that "the President [was] the final actor" because

he "retain[ed] the authority to issue a final decision on whether or not to issue the Presidential permit."  *Id.* at 1081.  Here, as discussed above, the President relinquished his referral and decisionmaking authority through his January 24, 2017 Memorandum.  82 Fed. Reg. 8663.

The *Sisseton-Wahpeton Oyate* decision is further flawed because, again as with *NRDC v. State*, it fails to acknowledge that State was also acting not just under E.O. 13337, but also pursuant to Congress' commands in NEPA.  659 F.Supp.2d at 1081 ("Here, the President was not acting under statutory authority").  Similarly, and contrary to Ninth Circuit precedent as discussed above, it fails to recognize that State's ROD/NID and underlying EIS are agency actions in their own right, distinct from the Presidential Permit.

The third and final pipeline case, *White Earth Nation v. Kerry*, is inapposite because it involved State's *interpretation* of a Presidential Permit, not its *issuance*, an entirely different type of action that required no NEPA review.  Civ. No. 14-4726, 2015 WL 8483278, at *7 (distinguishing *Sierra Club v. Clinton*, 689 F.Supp.2d 1147 because it "did not decide the issue of whether [State's] actions *pursuant* to the Presidential Permits at issue here are Presidential in nature;" emphasis added).

## C.  FEDERAL DEFENDANTS' ALTERNATE CLAIM THAT THEIR ACTION WAS COMMITTED TO AGENCY DISCRETION BY LAW IS UNSUPPORTABLE

Federal Defendants argue in the alternative that plaintiffs' claims are unreviewable because they are committed to agency discretion by law.  FDMPA

15-19 (*citing* 5 U.S.C. § 701(a)(2)).[3]  But while issuance of presidential permits

under EO 13337 is discretionary, State's own regulations mandate NEPA

compliance.  22 C.F.R. §§ 161.3, 161.5.  NEPA contains specific requirements

that agencies *must* follow *before they can issue discretionary approvals*, and

courts have a long history of applying those requirements.  42 U.S.C. §4332(2)(C);

*Overton Park*, 401 U.S. at 410.  Federal Defendants' citations to cases where

courts have afforded deference to "the Executive Branch's exercise of [] authority

over foreign affairs and national security" – in the absence of Congressional

restrictions on agency action through NEPA as is the case here – are therefore

inapposite.  FDMPA 15-16.

NEPA is not "drawn in such broad terms that in a given case there is no law

to apply."  *Overton Park*, 401 U.S. at 410; *ASSE*, 803 F.3d at 1068.  NEPA and

State's implementing regulations provide an amply "meaningful standard against

which to judge the agency's exercise of discretion."  *Heckler*, 470 U.S. at 830; 22

C.F.R. §§ 161.1-161.12.  NEPA constitutes a specific limit on "the agency's

discretion to act in the manner which is challenged."  *City of Santa Clara v.

Andrus*, 572 F.2d 660, 666 (9th Cir. 1978).  And the "mere fact that a statute

contains discretionary language does not make agency action unreviewable."

*ASSE*, 803 F.3d at 1068.  Furthermore, as noted above State itself promulgated

specific regulations making NEPA compliance *mandatory* in the issuance of all

---

[3] TransCanada implies a similar argument, but does not mention exceptions to the APA.  TCMPA 17.  TransCanada's argument fails for the same reasons as Federal Defendants' argument.

presidential permits.  22 C.F.R. §§ 161.3, 161.5.

The APA embodies "the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' so long as no statute precludes such relief or the action is not one committed by law to agency discretion."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977)) (citing 5 U.S.C. §§ 702, 704).  The "generous review provisions [of the APA] must be given a hospitable interpretation."  *Id*. at 140-41 (quotation marks and citations omitted).  "A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review."  *Japan Whaling Association*, 478 U.S. at 230 fn. 4.  No such intention exists here.

The fact that Federal Defendants have broad discretion about whether to issue presidential permits "based on the 'national interest'" under EO 13337 and the President's January 24, 2017, Memorandum in no way exempts such decisions from NEPA review.  FDMPA 18.  To the contrary, "[t]he primary purpose of the impact statement is to compel federal agencies to give serious weight to environmental factors in making *discretionary choices*."  *Monroe County Conservation Council v. Volpe*, 472 F.2d 693, 697 (2nd Cir. 1972) (emphasis added); *see also RESTORE: The North Woods v. U.S.D.A.*, 968 F.Supp. 168, 175

(D.Vt. 1997) ("Because the case at bar involves a major federal action, where the [governing statute] does not expressly prohibit NEPA analysis, where the agency's role is not confined to the purely ministerial, and where it has discretion to impose terms and conditions on the transaction and to approve or disapprove the transaction based on the acceptability of the lands to be acquired, the proposed land exchange is not exempt from NEPA").

Federal Defendants' reliance on *Jensen v. National Marine Fisheries Service*, 512 F.2d 1189, 1191 (9th Cir. 1975) is misplaced because plaintiffs here are not challenging *regulations*.  In *Jensen*, the plaintiffs challenged the legality of a specific halibut fishing regulation.  512 F.2d at 1190.  By contrast here, plaintiffs seek to enforce State's NEPA regulations.  Furthermore, *Jensen* is also distinguishable because the Court expressly *assumed* – without *any* meaningful rationale or foundation – that the action involved was *not* a final agency action. *Id*. at 1191.[4]  As the court held in *Chu*, 2014 WL 1289444, *8, *Jensen* is distinguishable because "[p]laintiffs do not challenge the Secretary of State's approval of a regulation, . . . and perhaps most importantly, this case has nothing to do with the Ninth Circuit's explicit requirements for exemption from judicial review."

*No Oilport! v. Carter*, 520 F.Supp. 334 (W.D. Wash. 1981) is likewise

---

[4]  The *Jensen* Court, moreover, appeared far more concerned about the ripeness of the plaintiffs' claims than the application of the APA.  The court stated that plaintiffs' claims were nonjusticiable because the threat to their interests was "hypothetical."  No such "hypothetical" threat is posed here.  It is tangible.

distinguishable.  FDMPA 18-19.  Indeed, it supports plaintiffs.  It states that this court is "obligat[ed] to determine whether the [Federal Defendants] fully complied with the procedures mandated" by NEPA.  *No Oilport!*, 520 F.Supp. at 352. Federal Defendants obfuscate the nuanced ruling in *No Oilport!* by focusing on one claim made under the Public Utility Regulatory Policies Act.  FDMPA 19. But that claim is not relevant here, where the question before this Court, as shown above, is whether Federal Defendants complied with the procedural requirements of NEPA.  Indeed, the court in *No Oilport!* held that plaintiffs' *NEPA claims were reviewable*, despite the fact that "the President was required to make a finding on whether or not the particular proposal selected is in the national interest."  520 F.Supp. at 350, 352-359.  Likewise here, plaintiffs' NEPA claims are reviewable.

In this case, NEPA provides in its exacting procedural requirements – buttressed by detailed regulations – ample "law to apply."  *Overton Park*, 401 U.S. at 410.  Plaintiffs challenge Federal Defendants' *final decision* as contrary to law under the APA, 5 U.S.C. sections 706(2)(A)-(D), because that decision violated NEPA, which provides specific duties and requirements that the courts have long-settled authority to adjudicate.

### D.  PLAINTIFFS' INJURIES ARE REDRESSABLE

In what amounts to nothing more than a reframing of their previous arguments, Federal Defendants erroneously claim that plaintiffs "lack standing to challenge the issuance of the Presidential Permit because their alleged injuries are not redressable" "because the remedy that they seek – an order enjoining the

Presidential Permit – is not within the Court's authority to grant."  FDMPA 19-20.

This circular argument fails.  As the Ninth Circuit has repeatedly held, a "remedy, which is procedural in nature," would redress a procedural NEPA injury. *Ocean Advocates*, 402 F.3d at 860.  Where a plaintiff "'asserts inadequacy of a government agency's environmental studies under NEPA[, it] need not show that further analysis by the government would result in a different conclusion.  It suffices that, as NEPA contemplates, the [agency's] decision could be influenced by the environmental considerations that NEPA requires an agency to study." *Id*. (*quoting Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001)).  Because plaintiffs' NEPA claims are *procedural*, their injuries are redressable through the *procedural* remedy of adequate environmental review under NEPA.

Furthermore, like the holding in *Sierra Club v. Clinton*, "[b]ecause plaintiffs alleged procedural injuries under NEPA, the redressability standard is relaxed." 689 F.Supp.2d at 1155.  In *Sierra Club v. Clinton*, defendants argued that plaintiffs lacked standing "because the President has ultimate authority over the issuance of presidential permits for border crossings." *Id.*  However, the court held that a finding "that [State] violated NEPA and thus requires [State] to comply with NEPA before deciding whether to issue a permit," would redress plaintiffs' injury. *Id.*  The court noted that plaintiffs' injury "occur[red] at the time [State] failed to comply with NEPA because such a failure would increase the risk of environmental harm," and that "even though the President may be the ultimate decision-maker with respect to the issuance of the [Presidential] Permit, the

President's future actions or inactions are too speculative to preclude standing in this case." *Id.* So too here, plaintiffs' procedural injuries under NEPA, and the increased risk of environmental harm from the failure to comply with this important environmental statute, are redressable and do not preclude standing.

## II.   PLAINTIFFS' CHALLENGE TO THE BIOLOGICAL OPINION CANNOT BE DISMISSED

Defendants' last argument is that plaintiffs' allegations supporting their Endangered Species Act claim are inadequate.  FDMPA 21-24; TCMPA 18-21.  Not so.

As defendants concede (TCMPA 18-19), F.R.Civ.P. 8 governs this issue.  It requires "'a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The complaint need plead only "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Although plaintiffs' original Complaint did so, to avoid any conceivable dispute plaintiffs have proposed amendments to their Complaint.  Paragraphs 11-13 of their proposed First Amended Complaint describe plaintiffs' interests in affected wildlife and their habitat.  Paragraphs 82 through 111 describe Federal Defendants' ESA violations that threaten harm to plaintiffs' interests in ESA-protected species and their habitat.  These allegations provide a "short and plain statement of the claim."  If defendants contest their truth, they can file cross-

motions for summary judgment.

## CONCLUSION

Plaintiffs challenge a final agency action, and their challenge to the

Biological Opinion cannot be dismissed.  Defendants' motions must be denied.

Dated:  July 14, 2017          PATTEN, PETERMAN, BEKKEDAHL &
                               GREEN, PLLC
                               s/ *James A. Patten*
                               JAMES A. PATTEN


Dated:  July 14, 2017          LAW OFFICES OF STEPHAN C. VOLKER
                               s/ *Stephan C. Volker*
                               STEPHAN C. VOLKER (Pro Hac Vice)

                               Attorneys for Plaintiffs
                               INDIGENOUS ENVIRONMENTAL NETWORK
                               and NORTH COAST RIVERS ALLIANCE

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2) of the District of Montana Local Rules, I certify that this Brief contains 6499 words, excluding caption, certificates of service and compliance, table of contents and authorities, and exhibit index, as counted by WordPerfect X7, the word processing software used to prepare this brief.

Dated:  July 14, 2017          s/ *Stephan C. Volker*
                               STEPHAN C. VOLKER (Pro Hac Vice)

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2017, a copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

FEDERAL DEFENDANTS' MOTION TO DISMISS AND TRANSCANADA'S

MOTION TO DISMISS was electronically served on all counsel of record via the

Court's CM/ECF system.

<div style="margin-left:40%;">

<u>s/ *Stephan C. Volker*</u>
Attorneys for Plaintiffs
INDIGENOUS ENVIRONMENTAL NETWORK
and NORTH COAST RIVERS ALLIANCE

</div>

- 38 -