Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net
Attorney for Plaintiffs
(additional counsel listed on signature pages)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVER ALLIANCE, | |
| and | CV 17-29-GF-BMM |
| NORTHERN PLAINS RESOURCE COUNCIL, et al., | CV 17-31-GF-BMM |
| Plaintiffs, | **Northern Plains Plaintiffs' Preliminary Pretrial Statement** |
| v. | |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants, | |
| TRANSCANADA KEYSTONE PIPELINE and TRANSCANADA CORPORATION, | |
| Defendant-Intervenors. | |

1

Pursuant to Local Rule 16.2(b)(1) and the Court's July 25 Order, ECF No. 53, Northern Plains Plaintiffs submit this Preliminary Pretrial Statement. Brief responses to the information required by Local Rule 16.2(b)(1) are set forth below.

1. **Brief factual outline of the case**

This case concerns federal agency reviews for and approvals of the Keystone XL pipeline. Keystone XL is a massive commercial pipeline that would move 830,000 barrels of heavy crude from Canada to Nebraska every day. It poses significant threats to people and the environment in this country and around the world. But in March 2017, Under Secretary Shannon and the State Department (collectively, the State Department) issued a permit allowing Keystone XL to cross the Canadian border onto U.S. soil. That permit rests on stale and inadequate environmental reviews under the National Environmental Policy Act (NEPA) and the Endangered Species Act (ESA).

Specifically, the State Department failed to cure or supplement its January 2014 Environmental Impact Statement (EIS) before issuing a cross-border permit for Keystone XL, in violation of NEPA. The Bureau for Land Management, which must approve rights of way before Keystone XL can cross approximately forty-seven miles of federal land, will likely rely on the 2014 EIS to make its decision, violating NEPA for substantially the same reasons as the State Department. By failing to give a reasoned explanation for reversing its earlier decision to deny a

cross-border permit, the State Department also violated the Administrative Procedure Act (APA). The U.S. Fish and Wildlife Service's (Service's) concurrence in the State Department's determination that Keystone XL is "not likely to adversely affect" the endangered whooping crane, endangered interior least tern, and threatened piping plover violated the APA. Finally, by failing to complete formal consultation with the Service to ensure that Keystone XL is unlikely to jeopardize these species' continued existence, the State Department violated its duty to ensure no jeopardy under the ESA.

**2. Basis for federal jurisdiction and venue in this division**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. §§ 2201-2202 (declaratory judgment), 5 U.S.C. § 702 (APA), and 16 U.S.C. § 1540(c) & (g) (ESA). As required by the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(2)(A)(i), Plaintiffs provided the State Department, the Service, and Interior Secretary Zinke with sixty days' written notice of the ESA violations alleged in their fifth claim for relief. *See* ECF No. 58 ¶¶ 16, 173-78 (Third Amended Complaint adding fifth claim for relief filed on September 8, 2017); ECF No. 58-1 (notice letter sent to Defendants on May 24, 2017).

Venue is proper in this division because the proposed route for Keystone XL crosses the U.S.-Canada border near Morgan, Montana, in Phillips County. The

route also crosses Valley County. Both Phillips and Valley counties are within this Court's Great Falls Division. L.R. 1.2(c)(3); *see also* 28 U.S.C. § 1391(e)(1) (venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated").

### 3. Factual basis and underlying legal theory for Plaintiffs' claims

*First claim for relief*: As described briefly above and in more detail throughout Plaintiffs' Third Amended Complaint, *see, e.g.*, ECF No. 58 ¶¶ 100-04, 118-25, 146-52, defendants State Department and Under Secretary Shannon violated NEPA and the APA when they relied on an inadequate and incomplete EIS to issue a cross-border permit for Keystone XL.

NEPA requires all federal agencies to prepare a "detailed statement," or EIS, for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The EIS must include: a statement of the action's purpose and need; a discussion of the action's direct, indirect, and cumulative effects; means for mitigating the action's adverse environmental impacts; and a list of reasonable alternatives that would avoid or minimize adverse environmental impacts. 40 C.F.R. §§ 1502.1, 1502.13, 1502.16, 1508.25. The EIS must be supplemented when significant new circumstances and/or information relevant to the action's environmental impacts arise. *Id.* § 1502.9(c)(1).

The State Department violated each of these requirements. Among other things, the 2014 EIS failed to adequately analyze Keystone XL's significant negative climate, air quality, water quality, pipeline safety, and biological impacts, both within the United States and beyond. The 2014 EIS also failed to consider the impacts of connected actions, such as Keystone XL's many power lines; the impacts of cumulative actions, such as the Enbridge Alberta Clipper (Line 67) pipeline expansion and TransCanada's Gulf Coast Pipeline; and a reasonable range of alternatives that would reduce the pipeline's impacts, including clean energy alternatives and reasonable route alternatives. Compounding these failures, the State Department arbitrarily and unlawfully refused to prepare a supplemental EIS before it issued the permit in 2017, despite significant new information and circumstances that have arisen since the 2014 EIS was completed, including, *inter alia*, weakened commercial demand for Keystone XL, impediments to transporting oil by rail, risks associated with tar sands crude oil spills, and threats to drinking and irrigation water for communities living along the pipeline's route.

*Second claim for relief*: As described briefly above and in more detail throughout Plaintiffs' Third Amended Complaint, *see, e.g.*, ECF No. 58 ¶¶ 139-45, 153-58, defendant Bureau of Land Management is poised to make its decision whether to approve rights of way for Keystone XL in reliance on the State

Department's stale 2014 EIS. Doing so would violate NEPA and the APA for the reasons stated above.

Under NEPA, a "cooperating agency" is a federal agency other than the lead agency that has jurisdiction by law or special expertise about any environmental impact of the proposed project. 40 C.F.R. § 1508.5. Cooperating agencies are required to participate in the NEPA process at the earliest possible time and assume responsibility, at the lead agency's request, for preparing environmental analyses in areas concerning the cooperating agency's special expertise. *Id.* § 1501.6(b). A cooperating agency may adopt, without recirculating, the lead agency's EIS if, after independent review of the EIS, the cooperating agency concludes that its comments and suggestions have been satisfied. *Id.* § 1506.3(c).

The State Department's 2014 EIS identifies the Bureau as a cooperating agency. To the best of Plaintiffs' knowledge, the Bureau could grant the necessary rights of way for Keystone XL within the next few weeks, and is likely to rely on the 2014 EIS to do so. This would violate NEPA and the APA for substantially the same reasons pleaded in Plaintiffs' first claim for relief. Accordingly, and assuming the Bureau has not taken final agency action on Keystone XL at the time this Court rules on Defendants' motions to dismiss, Plaintiffs have requested that the Court hold their claim against the Bureau in abeyance. ECF No. 51 at 48-49.

*Third claim for relief*: As described briefly above and in more detail throughout Plaintiffs' Third Amended Complaint, *see, e.g.*, ECF No. 58 ¶¶ 107-08, 116, 118-25, 159-63, the State Department violated the APA when it arbitrarily reversed its earlier decision to deny a cross-border permit for Keystone XL.

Where an agency reverses course on a prior decision, the APA requires that the agency: (1) display awareness that it is changing position; (2) show that the new policy is permissible under the statute; (3) believe that the new policy is better; and (4) provide good reasons for the new policy. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc) (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009)). If the new policy rests on factual findings that contradict those underlying the prior policy, the agency must include a reasoned explanation for disregarding the facts or circumstances that underlay or were engendered by the earlier policy. *Id.*

On November 3, 2015, the State Department denied the cross-border permit for Keystone XL, finding that the pipeline would be contrary to the national interest. Yet, on March 23, 2017—and in reliance on the same 2014 EIS and other federal agency review documents that existed in 2015—the State Department reversed course and granted the permit, this time determining that Keystone XL would serve the national interest. In doing so, the State Department failed to

provide a reasoned explanation for disregarding the facts and record underlying its earlier denial of the permit, in violation of the APA.

*Fourth claim for relief*: As described briefly above and in more detail throughout Plaintiffs' Third Amended Complaint, *see, e.g.*, ECF No. 58 ¶¶ 126-38, 164-72, defendant U.S. Fish and Wildlife Service violated the ESA and APA when it concurred in the State Department's erroneous determination that Keystone XL is "not likely to adversely affect" the whooping crane, interior least tern, and piping plover.

Section 7(a)(2) of the ESA requires action agencies to ensure, through consultation with the Service, that their actions are not likely to jeopardize the continued existence of endangered and threatened species or destroy or adversely modify critical habitat. 16 U.S.C. § 1536(a)(2). Under the ESA's implementing regulations, the Service reviews the action agency's biological assessment to determine whether the proposed action is likely to adversely affect any listed species or critical habitat. *See* 50 C.F.R. § 402.14(b)(1). To complete the informal consultation process, the Service must concur, in writing, in any "not likely to adversely affect" determination. *Id.* If the Service finds that a project may adversely affect listed species, formal consultation is required. *See id.*

The Service's concurrence that Keystone XL is not likely to adversely affect the whooping crane, interior least tern, and piping plover was arbitrary and

8

capricious under the APA. As the administrative record will show, construction of the pipeline, including construction of its associated power lines, will create new collision hazards and fragment and pollute critical habitat. Indeed, power line collisions are the primary cause of death for whooping cranes, of which there are fewer than 350 in the main surviving wild population—a number far below viability. The construction of power lines for Keystone XL directly within the whooping crane migratory corridor poses a significant threat to the continued survival of the species. These power lines will also encourage raptor perching and increase predation of terns and plovers.

In concurring in the State Department's "not likely to adversely affect" determination, the Service failed to adequately consider these threats. The Service also improperly relied on incomplete and insufficient mitigation measures that are unsupported by the best available science; erroneously relied on informal discussions with local power provides—who are not subject to ESA section 7(a)(2)—to implement those measures; and ignored important and readily available data for whooping cranes that is essential for developing effective conservation measures. The Service's concurrence was therefore contrary to the ESA and in violation of the APA.

*Fifth claim for relief*: As described briefly above and in more detail throughout Plaintiffs' Third Amended Complaint, *see, e.g.*, ECF No. 58 ¶¶ 126-38,

173-78, the State Department violated the ESA when it determined that Keystone XL is "not likely to adversely affect" the whooping crane, interior least tern, and piping plover.

Section 7(a)(2) of the ESA requires action agencies to ensure, through consultation with the Service, that their actions are not likely to jeopardize the continued existence of endangered and threatened species or destroy or adversely modify critical habitat. 16 U.S.C. § 1536(a)(2). The biological assessment, which is used to determine whether more extensive "formal consultation" is required, determines whether the action is "likely to adversely affect" any listed species. 50 C.F.R. §§ 402.02, § 402.12(a). It generally includes an analysis of the effects of the action on species and habitat, including consideration of cumulative effects, a review of the literature and views of recognized experts, and an analysis of alternate actions. *Id.* § 402.12(f). If after preparation of the biological assessment the action agency determines that the project is "not likely to adversely affect" listed species or critical habitat, and the Service concurs in that determination, then no further consultation is required. *Id.* § 402.12(k). But if the agency or Service determines that the project is likely to adversely affect listed species, then the agency must enter into a more extensive consultation process with the Service, known as formal consultation. *Id.*; *see also id.* § 402.14. The threshold for

triggering this formal consultation requirement is very low. *See* 51 Fed. Reg. 19,949, 19,949-50 (June 3, 1986).

Here, the State Department determined in its biological assessment that Keystone XL is not likely to adversely affect the whooping crane, interior least tern, or piping plover. Yet, as described above, Keystone XL poses significant risks of injury and harm to these species and their habitats—risks that the State Department, like the Service, failed to adequately consider. The State Department's determination was therefore erroneous, made without sufficient support, and failed to rely on the best available science, in violation of ESA section 7(a)(2). Had the State Department prepared a biological assessment for Keystone XL that complied with the ESA, the agency would have correctly concluded that the project is "likely to adversely affect" these listed species, and been bound to complete formal consultation with the Service before issuing a cross-border permit for Keystone XL. That formal consultation, in turn, would have resulted in the Service's development of a biological opinion and incidental take statement with common sense, enforceable conservation measures and other conditions that would ensure Keystone XL does not jeopardize the crane, tern, or plover, or else a reasonable and prudent alternative to Keystone XL that would be unlikely to cause such jeopardy.

\*   \*   \*

Given these unlawful actions, Plaintiffs respectfully request that the Court declare Defendants in violation of NEPA, the APA, and the ESA; vacate the cross-border permit and associated record of decision, the 2014 EIS, any Bureau right-of-way grants, and the parts of the State Department's Biological Assessment and Service's concurrence concerning the whooping crane, interior least tern, and piping plover; and prohibit any activity in furtherance of the construction or operation of Keystone XL until Defendants comply with these laws.

4. **Computation of damages**

    Damages are not at issue in this case.

5. **Pendency or disposition of any related state or federal litigation**

    A related case, *Indigenous Environmental Network v. United States Department of State*, No. CV-17-29-GF-BMM, is currently pending in this Court. Per this Court's October 4 Order, ECF No. 75, the two cases have been consolidated.

6. **Proposed additional stipulations of fact, and Plaintiffs' understanding as to what law applies**

    Pursuant to this Court's July 25 Order, ECF No. 53, Plaintiffs are submitting a Proposed Statement of Stipulated Facts simultaneously with the filing of this Statement. At this time, Plaintiffs do not propose any additional stipulations of fact. As to what law applies, Plaintiffs' Third Amended Complaint pleads claims

under NEPA, the APA, and the ESA, *see* ECF No. 58 ¶¶ 146-78; it is their understanding that those laws govern this suit.

### 7. Proposed deadlines for joinder of parties or amendment of pleadings

Plaintiffs propose that no deadlines be set for either joinder of additional parties or amendment of the pleadings. As discussed above, the Bureau of Land Management has not yet taken final agency action on TransCanada's application for rights of way for Keystone XL. Additionally, the U.S. Army Corps of Engineers is currently considering TransCanada's pre-construction notifications under section 404 of the Clean Water Act.[1] Once these agencies act—and it is unclear why they have yet to, or when they will do so—Plaintiffs may amend their complaint to add additional claims and parties to the suit.

### 8. Controlling issues of law suitable for pre-trial disposition

As outlined in the Plaintiffs' Proposed Rule 26 Discovery Plan, filed simultaneously with this Statement, Plaintiffs believe that their NEPA and APA claims (claims 1-3) and their APA-based claim concerning endangered species (claim 4) are suitable for disposition through summary judgment based on the administrative record. Plaintiffs believe that their ESA citizen-suit claim (claim 5),

---

[1] The Corps' website indicates that it received the pre-construction notifications on May 30, 2017, and that, as of June 22, 2017, none of the notifications had been determined "complete." *Pre-Construction Notifications*, U.S. Army Corps of Eng'rs, http://www.nwo.usace.army.mil/Missions/Dam-and-Lake-Projects/PCN/.

while possibly suitable for disposition through summary judgment, may require a bench trial following limited discovery. Although Plaintiffs' fourth claim is a record review claim, Plaintiffs propose that it be heard at the same time as the fifth claim because it is closely related to that claim.

### 9. Individuals with information pertaining to Plaintiffs' ESA claim

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(B)(I), Plaintiffs' NEPA and APA claims (claims 1-4) are exempt from the initial disclosures required under Rule 26(a). Thus, although Local Rule 16.2(b)(1)(J) requires a list of individuals known or believed to have information pertaining to the parties' claims or defenses, Plaintiffs are not required to provide such information as it relates to claims 1-4.

Plaintiffs' ESA citizen-suit claim (claim 5), however, is not a record review claim. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (holding that the court "may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim."); *see also Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."). Accordingly, Plaintiffs submit the following list of individuals known or believed to have information relevant to their ESA claim:

14

- Paul Johnsgard, Ph.D., Lincoln, NE. Dr. Johnsgard may, as appropriate, offer testimony tending to show that Plaintiffs have standing to maintain this action.

- Brett Hartl, Washington, D.C. Mr. Hartl may, as appropriate, offer testimony tending to show that Plaintiffs have standing to maintain this action.

- Molly Bartlett, Boston, MA. Ms. Bartlett may, as appropriate, offer testimony tending to show that Plaintiffs have standing to maintain this action.

- Any person at defendant Department of State or defendant U.S. Fish and Wildlife Service involved in ESA compliance for Keystone XL.

- Any person at intervenor TransCanada Keystone Pipeline, LP or intervenor TransCanada Corporation, or any other related corporate entity, involved in ESA compliance for Keystone XL.

- Any person working for the power providers that would construct and/or operate the power lines for the pump stations for Keystone XL, and who is involved in ESA compliance or determining and/or mitigating impacts to migratory birds.

- Any person at the Canadian Wildlife Service who works as part of the Whooping Crane Tracking Partnership.

- Any person at the Nebraska Public Service Commission involved in granting permits or other approvals for Keystone XL.

- Any person at the South Dakota Public Utilities Commission involved in granting permits or other approvals for Keystone XL.

- Any person at the Montana Department of Environmental Quality involved in granting permits or other approvals for Keystone XL.

Plaintiffs served their initial disclosures for this claim on all parties on October 2, 2017. See Fed. R. Civ. P. 26(a)(1)(A)-(C). Additionally, Plaintiffs may present

expert testimony on claim 5. As stated in the Plaintiffs' Proposed Rule 26 Discovery Plan, Plaintiffs believe that disclosure of such experts should occur simultaneously, and that rebuttal experts should be disclosed 30 days after initial expert disclosures.

**10. Substance of any relevant insurance agreement**

Plaintiffs are not aware of any insurance agreement relevant to this case.

**11. Status of any settlement discussions or prospects for compromise**

The parties have not engaged in any settlement discussions and do not expect to pursue such discussions at this time.

**12. Suitability of special procedures**

Should TransCanada indicate that project construction is slated to begin while Plaintiffs' claims are still pending, Plaintiffs may seek a preliminary injunction. Plaintiffs do not foresee the need for any other special procedures.

Respectfully submitted,

Dated: October 4, 2017

/s/ Doug Hayes
Doug Hayes (*pro hac vice*)
/s/ Eric Huber
Eric Huber (*pro hac vice*)
Sierra Club Environmental Law Program
1650 38th Street, Suite 102W
Boulder, CO 80301
(303) 449-5595
doug.hayes@sierraclub.org
huber@sierraclub.org

*Attorneys for Sierra Club and Northern Plains Resource Council*

/s/ Jaclyn Prange
Jaclyn Prange (*pro hac vice*)
/s/ Cecilia Segal
Cecilia Segal (*pro hac vice*)
Natural Resources Defense Council
111 Sutter Street, Floor 21
San Francisco, CA 94104
(415) 875-6100
jprange@nrdc.org
csegal@nrdc.org

*Attorneys for Bold Alliance and Natural Resources Defense Council*

/s/ Jared Margolis
Jared Margolis (*pro hac vice*)
/s/ Amy Atwood
Amy R. Atwood (*pro hac vice*)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6401
jmargolis@biologicaldiversity.org
atwood@biologicaldiversity.org

*Attorneys for Center for Biological Diversity and Friends of the Earth*

/s/ Timothy M. Bechtold
Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

*Attorney for all Plaintiffs*