Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net
Attorney for Northern Plains Plaintiffs
(additional counsel listed on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVER ALLIANCE, | |
| and | |
| | CV 17-29-GF-BMM |
| NORTHERN PLAINS RESOURCE COUNCIL, et al., | |
| | CV 17-31-GF-BMM |
| Plaintiffs, | |
| | **Northern Plains Plaintiffs' Motion to Complete the Administrative Records and Lift the Confidentiality Designation for Certain Files** |
| v. | |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants, | |
| TRANSCANADA KEYSTONE PIPELINE and TRANSCANADA CORPORATION, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Northern Plains Plaintiffs respectfully move the Court for an order compelling the completion of the administrative records filed by the U.S. Department of State (State Department) and U.S. Fish and Wildlife Service (Service) (collectively, Federal Defendants) on December 8, 2017, and lifting the confidentiality designation for certain files.[1] *See* ECF No. 104. The administrative records are deficient in at least three ways. First, Federal Defendants have wrongly omitted an unknown number of emails and other internal communications considered by the agencies during their review of the Keystone XL pipeline. Second, even if Federal Defendants are correct in claiming that these internal communications are exempt from disclosure under the deliberative process (or other) privilege, they must justify that claim and produce a privilege log. Third, Federal Defendants have improperly designated as confidential Geographic Information System (GIS) files showing the location of the pipeline route and its ancillary facilities.

Meaningful judicial review of Plaintiffs' claims under the Administrative Procedure Act (APA) cannot proceed without adequate administrative records. Accordingly, and in light of Plaintiffs' February 9 deadline to file their motion for

---

[1] Plaintiffs conferred with all parties before filing this motion. Federal Defendants oppose the motion. TransCanada did not offer a position. IEN Plaintiffs will inform the Court of their position upon review of the motion.

summary judgment, *see* ECF No. 90, Plaintiffs seek an order: (1) requiring Federal Defendants to immediately provide all materials improperly excluded or withheld from the records; (2) requiring Federal Defendants to produce a privilege log identifying and justifying any claims of privilege for materials that continue to be withheld; and (3) lifting the confidentiality designation of the GIS files.

## BACKGROUND

At the preliminary pretrial conference, this Court ordered Federal Defendants to serve the administrative record by November 10, 2017, and to include with it all current route location information for the pipeline and its associated facilities. Segal Decl., Ex. B, Oct. 11, 2017 Tr. 6:2-15. Federal Defendants served Plaintiffs with a preliminary record for the State Department and a preliminary record for the Service on November 9, 2017. Segal Decl. ¶ 3.

On November 30, 2017, Plaintiffs sent Federal Defendants a letter containing several objections to the preliminary records. Segal Decl., Ex. C. Specifically, Plaintiffs noted that Federal Defendants had apparently withheld emails and other inter-agency communications that should have been included in the records or, at the very least, identified on a privilege log. *Id.* at 4-5. Plaintiffs also noted that Federal Defendants omitted the GIS location data of the pipeline route and its ancillary facilities, despite this Court's clear order that such materials be included. *Id.* at 7. These GIS data are the subject of a separate lawsuit brought

by the Center for Biological Diversity and a co-plaintiff under the Freedom of

Information Act (FOIA), *Center for Biological Diversity v. U.S. Department of

State*, No. 1:17-cv-937-TSC (D.D.C.).

On December 8, 2017, Federal Defendants lodged the final administrative

records with the Court. ECF No. 104. Federal Defendants also sent Plaintiffs a

letter regarding Plaintiffs' earlier concerns. Segal Decl., Ex. D. As to the

withholding of internal communications, Federal Defendants denied that they were

required to include them in the records or to prepare a privilege log justifying the

withholdings. *Id.* at 6-7. According to Defendants, "internal communications that

contained significant substantive discussion of issues and which were important to

the decisions at issue in this case were included in the records," *id.* at 7—meaning,

apparently, that Federal Defendants excluded from the administrative record all

internal communications that they unilaterally decided contain no "significant

substantive discussion of issues."

As to the GIS data, Federal Defendants stated that, because the government

had claimed that the data were exempt from disclosure under exemptions 4 and 7

in the FOIA litigation, the data "cannot be made public" in this case. *Id.* at 8. The

parties have since filed a joint motion for a protective order, which the Court

granted on January 4, 2018. ECF No. 114. The protective order provides that

Federal Defendants will disclose the GIS data to Plaintiffs for use in this litigation,

and that court filings that include or refer to these materials will be filed under seal or redacted. *Id.* ¶¶ 1-2, 7. The order also preserves Plaintiffs' right to challenge the designation of the GIS data as confidential. *Id.* ¶ 8.

In a telephonic meet-and-confer on December 19, 2017, counsel for Federal Defendants reiterated their belief that certain internal communications, including agency emails, need not be disclosed as part of the administrative records, nor identified on a privilege log. Segal Decl. ¶ 7. They also continued to assert that the GIS data are confidential. *Id.*; *see also* ECF No. 114 ¶ 2. To ensure that both Plaintiffs and the Court have adequate records to examine Federal Defendants' actions concerning the Keystone XL pipeline, and in view of Plaintiffs' upcoming deadline to file their opening summary judgment brief, Plaintiffs respectfully move the Court for an order compelling the completion of the administrative records and lifting the confidentiality designation of the GIS files.

## STANDARD OF REVIEW

Although the government's designation of the administrative record is entitled to a presumption of completeness, a plaintiff may rebut this presumption with clear evidence to the contrary. *Oceana, Inc. v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017). A plaintiff meets this standard by "identify[ing] the allegedly omitted materials with sufficient specificity" and providing "reasonable, non-speculative grounds for the belief that

4

the documents were considered by the agency and not included in the record," or else by "showing that the agency applied the wrong standard in compiling the record." *Id.* (internal quotation marks omitted). The plaintiff "need not show bad faith or improper motive." *Id.*

## ARGUMENT

### A.  Federal Defendants must include all internal communications in the administrative records

Federal Defendants contend that "internal communications reflecting the internal thought processes of the agency . . . are not properly part of an agency's administrative record." Segal Decl., Ex. D at 6. To the contrary, these types of communications are integral to an agency's decision-making process and, as such, belong in the record.

Judicial review under the APA is based on "the whole record" that was before the agency at the time it made its decision. 5 U.S.C. § 706; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). This allows a court to determine whether the agency has acted arbitrarily and capriciously, i.e., whether it has articulated a "rational connection between the facts found and the choice made," "relied on factors which Congress has not intended it to consider," "entirely failed to consider an important aspect of the problem," or "offered an explanation for its decision that runs counter to the evidence before [it]." *Motor*

*Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

The "whole record" includes "all documents and materials directly or *indirectly* considered by agency decision-makers and . . . evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks omitted). It also includes internal and external communications regarding the agency's decision-making process, "including drafts, internal reviews and critiques, inter-agency reviews, dissent from agency scientists, [and] e-mail exchanges or other correspondence between and among the agencies and/or others involved." *People of the State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006); *see also* U.S. Dep't of Justice, Env't & Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record 3-4 (Jan. 1999) (confirming that these types of communications belong in the administrative record).[2]

That these materials might reflect internal deliberations does not automatically exclude them from the record. *See Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) ("It is

---

[2] The Department of Justice's guidance document is available at http://environment.transportation.org/pdf/programs/usdoj_guidance_re_admin_record_prep.pdf. Although the guidance is outdated and nonbinding, the Ninth Circuit still finds it "persuasive." *In re United States*, 875 F.3d 1200, 1208 (9th Cir. 2017), *vacated*, 138 S. Ct. 443 (2017).

obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision. Therefore, the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the [administrative record]."). Indeed, several district courts in this Circuit have held that internal, deliberative communications are part of the administrative record. *See, e.g.*, *id.*; *Ctr. for Food Safety v. Vilsack*, No. 15-cv-01590-HSG (KAW), 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017); *Lockyer*, 2006 WL 708914, at *3; *United Farm Workers v. Adm'r, EPA*, No. C 07-3950, 2008 WL 3929140, at *2 (N.D. Cal. Aug. 26, 2008).

Most recently, the District Court for the Northern District of California ordered that certain internal communications be included in the record for the rescission of the Deferred Action for Childhood Arrivals (DACA) program. *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017). In denying mandamus relief, the Ninth Circuit found no clear error in the district court's approach. *In re United States*, 875 F.3d 1200, 1210 (9th Cir. 2017); *accord* Segal Decl., Ex. E, *In re Nielsen*, No. 17-3345, slip op. at 1, 3 (2d Cir. Dec. 27, 2017) (denying mandamus in parallel DACA suit and asserting that "the possibility that some documents not

included in the record may be deliberative does not necessarily mean that they were properly excluded").[3]

The administrative records lodged by the government in this case improperly omit many of these internal communications. Indeed, Federal Defendants admit that the final records include only those internal communications that, in their unilateral view, "contained significant substantive discussion of issues and which were important to the decisions at issue in this case"; all other internal communications were apparently excluded. *See* Segal Decl., Ex. D at 7. Thus, the records do not include, for example, drafts of the State Department's Biological Assessment or the Service's Biological Opinion. They also contain very few emails and other intra- or inter-agency communications, despite review of the Keystone XL pipeline lasting years and involving over fifteen federal agencies. Notably absent is a 2013 comment letter from the U.S. Environmental Protection Agency criticizing the sufficiency of the State Department's Draft Supplemental Environmental Impact Statement. *See* Segal Decl., Ex. A. And of the emails that *were* provided, many are missing attachments.

---

[3] The Supreme Court subsequently vacated the Ninth Circuit's decision on other grounds. 138 S. Ct. at 445 (declining to address the administrative-record questions and instead ordering the district court to resolve the government's threshold jurisdictional arguments).

8

These omissions are more than sufficient to overcome any presumption of completeness. To begin, Federal Defendants applied the wrong legal standard when compiling the administrative records. *See Oceana*, 2017 WL 2670733, at *2 ("[A] certification that does not make clear that the record includes all documents and materials directly or indirectly considered by the agency in making its decision suggests noncompliance with the standard according to which an administrative record should be compiled." (internal quotation marks omitted)). As discussed above, these records must include materials considered either directly or indirectly by the agencies, including those that might be deemed deliberative. *See id.* Federal Defendants' record certifications and communications with Plaintiffs make clear that they did not follow this standard. *See, e.g.*, ECF No. 104-2 ¶ 2 (certifying that the State Department record includes documents and materials "that were considered by" the agency); ECF No. 104-4 ¶ 3 (certifying that the documents lodged "is" the Service's record); Segal Decl., Ex. D at 7 (asserting that "the agencies' records need not include each and every e-mail or internal communication").

Worse, Federal Defendants have excluded an unknown number of internal communications from the records, disclosing only those deemed by the agencies to be "important." Segal Decl., Ex. D at 7. This sort of cherry-picking is precisely what section 706 of the APA is meant to avoid. An agency cannot unilaterally

9

decide what is "important" enough to be in the administrative record. To hold otherwise would allow the agency to create a "fictional account of the actual decisionmaking process," rendering judicial review meaningless. *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Nielsen*, No. 17-3345, slip op. at 2 (allowing the government to cherry-pick the record "would impede the court from conducting the 'thorough, probing, in-depth review' of the agency action with which it is tasked" (quoting *Overton Park*, 401 U.S. at 415)).

The Court should order Federal Defendants to include in the administrative records all materials directly or indirectly considered by the agencies in reviewing Keystone XL, regardless of whether they support Federal Defendants' positions and regardless of whether they reflect internal deliberations.

**B.     Even if certain internal communications are privileged, Federal Defendants must justify that claim and provide a privilege log**

If an agency believes that materials should be withheld from the record as privileged, it must identify and support the claim in a privilege log. It cannot simply "pretend[] the protected material wasn't considered," withholding it wholesale without so much as a privilege log. *Burwell*, 2017 WL 89003, at *1; *Vilsack*, 2017 WL 1709318, at *5. Yet that is precisely what Federal Defendants have done here. They have wrongly withheld countless internal communications

from the administrative records under the deliberative process privilege, while also refusing to provide a privilege log.

"The deliberative process privilege is a qualified one." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). To invoke it, an agency must "make a specific showing establishing the application of [the] privilege for each document that it contends that it may withhold." *Lockyer*, 2006 WL 708914, at *4. This showing must be made by a department head "after actual personal consideration," *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998), and must be identified in a privilege log, *see, e.g.*, *Regents of Univ. of Cal.*, 2017 WL 4642324, at *7 (collecting cases, and requiring a privilege log for all documents withheld on grounds of privilege), *denying mandamus sub nom. In re United States*, 875 F.3d at 1210 (holding that district court's decision to require privilege log was not clearly erroneous); *see also* Guidance to Federal Agencies on Compiling the Administrative Record, *supra*, at 4 (instructing agencies to prepare privilege logs). The purpose of these requirements is "not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure . . . but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991); *accord In re Nielsen*, No. 17-3345, slip op. at 3 ("[W]ithout a privilege log, the

11

District Court would be unable to evaluate the Government's assertions of privilege.").

Federal Defendants are attempting to skirt these requirements here. They have withheld an unknown number of materials from the administrative records, offering only a blanket assertion of the deliberative process privilege. *See* Segal Decl., Ex. D at 6-7. And, because they have refused to provide a privilege log,[4] *see id.*, it is impossible for Plaintiffs and the Court to determine how extensive the withholdings are and whether they are appropriate. Accordingly, the Court should order Federal Defendants to produce a privilege log that adequately describes the withheld materials, identifies the basis for their withholding, and substantiates any claimed privileges.

## C.    The Court should lift the confidentiality designation for the GIS data

Although Federal Defendants concede that the GIS data are part of the administrative records, *see* Segal Decl., Ex. D at 8, they continue to assert that the data are confidential. Pursuant to the protective order entered on January 4, 2018, Plaintiffs challenge this designation. ECF No. 114 ¶ 8.[5]

---

[4] The State Department record index does include a log of documents that have been produced but redacted, ECF No. 104-1, but even that is insufficient. The index fails to adequately explain the basis for redactions, and does not log documents that have been entirely withheld.

[5] While the protective order gives Plaintiffs access to the GIS data, it restricts their use of the data and requires that any court filings including or

Federal Defendants claim the GIS data are confidential under FOIA exemptions 4 and 7. ECF Nos. 104-2 ¶ 4, 104-4 ¶ 4. But they provide no explanation for why these statutory exemptions would apply in this non-FOIA case. Regardless, even assuming those exemptions apply here, "an agency that invokes one of the statutory exemptions . . . bears the burden of demonstrating that the exemption properly applies to the documents." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (internal quotation marks omitted). Federal Defendants have not met this burden. As such, the confidentiality designation for the GIS data must be lifted.

Exemption 4 allows agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information is confidential if its disclosure is likely to (1) "impair the government's ability to obtain necessary information in the future," or (2) "cause substantial harm to the competitive position of the person from whom the information was obtained." *Watkins*, 643 F.3d at 1194 (internal quotation mark omitted). The government has not offered any reason why public disclosure of the GIS data would trigger either of these prongs. *See* ECF Nos. 104-2 ¶ 4, 104-4 ¶ 4

---

referring to the data be filed under seal or redacted, to the public's detriment. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (recognizing a general right to inspect judicial records and documents, which is "justified by the interest of citizens in keeping a watchful eye on the workings of public agencies" (internal quotation marks and alteration omitted)).

13

(stating, without explanation, that exemptions 4 and 7 apply); *see also* Segal Decl., Ex. D at 8 (same). Indeed, there are none. The general locations of the pipeline and its related infrastructure are already known. The specific locations will become evident once construction begins. There can therefore be no harm to either the government or TransCanada from making these data public now.

Exemption 7, meanwhile, prevents disclosure of "records or information compiled for law enforcement purposes" where such disclosure could, *inter alia*, "reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Even if Federal Defendants had substantiated this exemption, it would be inapplicable on its face. As a threshold matter, the GIS data were not compiled for law enforcement purposes. *L.A. Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 895-96 (C.D. Cal. 2006) (to meet the threshold inquiry, an agency without a clear law enforcement mandate must show that it was "functioning within a cognizable 'sphere of enforcement authority'" when it compiled the information). Rather, they were compiled to help the State Department—and ultimately Mr. Shannon, Under Secretary *for Political Affairs*—decide whether to grant TransCanada's application for a cross-border permit for Keystone XL.

Assuming that the GIS data were, however, compiled for law enforcement purposes, Federal Defendants still cannot show that their public disclosure "could

14

reasonably be expected to endanger the life or physical safety of any individual."

As previously noted, the precise location of the project will become known once

construction starts. To assert that public disclosure of this information now might

physically endanger someone "is nothing more than unsupported speculation."

*Lawyers' Comm. For Civil Rights v. U.S. Dep't of Treasury*, No. C 07-2590 PJH,

2008 WL 4482855, at *19 (N.D. Cal. Sept. 30, 2008) (finding "conclusory,

unsupported statements" insufficient to justify the use of exemption 7(F)).

In short, because Federal Defendants have failed to justify the application of

FOIA exemptions 4 and 7 to the GIS data, that data cannot be designated

confidential.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order

Federal Defendants to complete the administrative records—and to provide a

privilege log identifying the bases for any continued withholdings—as soon as

possible, but no later than January 29, 2018. Plaintiffs also request an order lifting

the confidentiality designation of the GIS files.

Respectfully submitted,

Dated:       January 8, 2018        /s/ Doug Hayes
                                    Doug Hayes (*pro hac vice*)
                                    /s/ Eric Huber
                                    Eric Huber (*pro hac vice*)
                                    Sierra Club Environmental Law Program
                                    1650 38th Street, Suite 102W

15

Boulder, CO 80301
(303) 449-5595
doug.hayes@sierraclub.org
eric.huber@sierraclub.org

*Attorneys for Sierra Club and Northern
Plains Resource Council*

/s/ Jaclyn Prange
Jaclyn Prange (*pro hac vice*)
/s/ Cecilia Segal
Cecilia Segal (*pro hac vice*)
Natural Resources Defense Council
111 Sutter Street, Floor 21
San Francisco, CA 94104
(415) 875-6100
jprange@nrdc.org
csegal@nrdc.org

*Attorneys for Bold Alliance and Natural
Resources Defense Council*

/s/ Jared Margolis
Jared Margolis (*pro hac vice*)
/s/ Amy Atwood
Amy R. Atwood (*pro hac vice*)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6401
jmargolis@biologicaldiversity.org
atwood@biologicaldiversity.org

*Attorneys for Center for Biological Diversity
and Friends of the Earth*

/s/ Timothy M. Bechtold
Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051

16

Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

*Attorney for all Plaintiffs*

17

**WORD COUNT CERTIFICATION**

I certify that the foregoing brief contains 3,577 words, as counted with Microsoft Word's "word count" tool, and excluding material Local Civil Rule 7.1(d)(2)(E) omits from the word-count requirement.

<u>/s/ Cecilia Segal</u>

18

## CERTIFICATE OF SERVICE

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF system.

/s/ Cecilia Segal

19