**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVER ALLIANCE,<br><br>and<br><br>NORTHERN PLAINS RESOURCE COUNCIL, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>        Defendants<br><br>and<br><br>TRANSCANADA KEYSTONE PIPELINE and TRANSCANADA CORPORATION,<br><br>        Defendant-Intervenors. | **CV-17-29-GF-BMM**<br><br>**CV-17-31-GF-BMM**<br><br><br><br>**PARTIAL ORDER ON SUMMARY JUDGMENT REGARDING NEPA COMPLIANCE** |

Plaintiffs Indigenous Environmental Network and Northern Plains Resource

Council (collectively "Plaintiffs") bring this action against the United States

1

Department of State and various other governmental agencies and agents in their official capacities ("Federal Defendants"). Plaintiffs allege that the State Department violated the Administrative Procedure Act ("APA"), the National Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA") when it published its Record of Decision ("ROD") and National Interest Determination ("NID") and issued the accompanying Presidential Permit to allow defendant-intervenor TransCanada Keystone Pipeline, LP ("TransCanada") to construct a cross-border oil pipeline known as Keystone XL ("Keystone"). Plaintiffs have moved for summary judgment. (Docs. 139 & 145.) Federal Defendants and TransCanada have filed cross motions for summary judgment. (Docs. 172 & 170.) The Court held a hearing on these motions on May 24, 2018. (Doc. 194.) The Court is prepared to rule on a portion of Plaintiffs's motion for summary judgment. The Court will rule on the remaining issues in a forthcoming Order.

## BACKGROUND

The Court detailed the background of this case in its Order regarding Federal Defendant's and TransCanada's Motion to Dismiss for Lack of Jurisdiction. (Doc. 99.) The Court will only recite those facts that have arisen since its Order regarding jurisdiction.

The Nebraska Public Service Commission ("PSC") denied TransCanada's application for its preferred route on November 20, 2017. (Doc. 104-1.) The Nebraska PSC instead approved the "Mainline Alternative" route. *Id.* The Mainline Alternative route goes through five different counties and crosses several different water bodies than the original preferred route. *Id.* The Mainline Alternative route also would be longer. This added length requires an additional pump station and accompanying power line infrastructure. *Id.*

After the Nebraska PSC announced its decision, Plaintiffs notified Federal Defendants that they needed to reinitiate ESA Section 7(a)(2) consultation on the Mainline Alternative route to assess the potential effects of the new route on endangered and threatened species. (Doc. 141-1.) Plaintiffs also requested that Federal Defendants prepare a supplemental EIS. *Id.* Federal Defendants have taken steps to reinitiate ESA Section 7(a)(2) consultation with the appropriate agencies, including FWS. Federal Defendants have not committed, however, to supplementing the EIS. *Id.*

## LEGAL STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment remains appropriate for resolving a challenge to a federal agency's actions when review

will be based primarily on the administrative record. *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006).

The APA's standard of review governs Plaintiffs's claims. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481, 496 (9th Cir. 2011); *Bennett v. Spear*, 520 U.S. 154, 174 (1997). The APA instructs a reviewing court to "hold unlawful and set aside" agency action deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A rational connection must exist between the facts found and the conclusions made in support of the agency's action. *Kraayenbrink*, 632 F.3d at 481.

## DISCUSSION

### I. Federal Defendants did not properly analyze Keystone's environmental impacts considering Federal Defendants did not know Keystone's final route through Nebraska.

Plaintiffs argue that the agencies could not properly analyze Keystone's environmental impacts without knowing its route through Nebraska. (Doc. 140 at 17.) NEPA serves as the "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). NEPA requires all federal agencies to prepare a "detailed statement" for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

This detailed statement, known as an environmental impact statement ("EIS"), must describe the environmental impacts of the proposed action. 42

U.S.C. § 4332(2)(C)(i), (ii). The EIS must include a "full and fair discussion" of the effects of the proposed action, including those on the "affected region, the affected interests, and the locality." 40 C.F.R. §§ 1502.1, 1508.27(a). Further, for a "site-specific action, significance would usually depend upon the effects in the locale . . ." *Id.*, § 1508.27(a). The agency must finally consider the "unique characteristics of the geographic area" when determining the significance of an action. *Id.*, § 1508.27(b)(2). An agency also may be required to perform a supplemental analysis "if significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts" arise during the NEPA review. 40 C.F.R. § 1502.9(c)(1)(ii).

Plaintiffs further argue that Federal Defendants must address the Mainline Alternative route pursuant to its NEPA obligations as it proves to be a "connected action" to the proposed action. (Doc. 146 at 48.); 40 C.F.R. § 1508.25(a)(1). A federal agency must consider connected actions together in a single EIS. *Id.* NEPA defines connected actions as any of the following: those actions that "automatically trigger other actions which may require environmental impact statements;" those actions that "cannot or will not proceed unless other actions are taken;" or those actions are interdependent parts of a larger action and depend on the larger action for their justification." 40 C.F.R. § 1508.25(a)(1). In determining whether two actions are connected for the purposes of NEPA, a court must examine whether the

5

two actions have "independent utility" or whether it would be "irrational, or at least unwise, to undertake the first phase if subsequent phases were not also undertaken." *Daly v. Volpe*, 514 F.2d 1106, 1110 (9th Cir. 1975); *Thomas v. Peterson*, 753 F.2d 754, 759 (9th Cir. 1985) (overruled on other grounds by *Cottonwood Environmental Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088-92 (9th Cir. 2015).

The Ninth Circuit in *Thomas* considered whether a road and a timber sale were sufficiently related to require combined treatment in a single EIS that covered the cumulative effects of each. *Thomas*, 753 F.2d at 757. The Forest Service argued that it remained proper for it to consider separately the effects of the road and the timber sale. *Id.* The Ninth Circuit recognized that administrative agencies must be given considerable discretion in defining the scope of an EIS. The Ninth Circuit further noted, however, that situations exist in which an agency must be required to consider several related actions in a single EIS. *Id.* The failure to consider several related actions in a single EIS would allow a project to be divided into multiple actions, "each of which individually has an insignificant environmental impact, but which collectively have a substantial impact." *Id.* at 758. The road construction and the contemplated timbers sales were inextricably intertwined as evidenced by the timber sales not being able to proceed without the

6

road and the road not being built, but for the contemplated timber sales. *Id.* The road and the timber sales qualified as connected actions. *Id.*

Federal Defendants argue that the Nebraska PSC did not approve Mainline Alternative route until after the issuance of the Presidential Permit. (Doc. 173 at 31.) This decision from the Nebraska PSC proved beyond the control of Federal Defendants and TransCanada. *Id.* Federal Defendants argue that NEPA imposes no obligation on the Federal Defendants to prepare a supplemental analysis to address the Mainline Alternative route when the EIS remained complete. (Doc. 185 at 15.)

Federal Defendants further argue that the language of the Presidential Permit "clearly limits the State Department's ongoing oversight to circumstances where there is a 'substantial change in the United States facilities,' which are defined to include only the 1.2 mile border segment." *Id.* Federal Defendants finally contend that any NEPA process that the State Department has begun in connection with the Mainline Alternative route simply supports the Bureau of Land Management's right-of-way decision. *Id.*

TransCanada argues that the State Department possesses no obligation under NEPA to review the impacts of the Nebraska PSC's decision as there remains no "ongoing major federal action" for the agency to take. *Id.* TransCanada contends that the State Department had completed its federal action when it made its national interest determination and issued the Presidential Permit. TransCanada

7

relies heavily on *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1095 (9th Cir. 2013), for the proposition that no ongoing major federal action exists that could require supplementation once an agency action proves complete.

In *Salazar*, a mining company decided to resume mining operations after a seventeen-year hiatus. *Id.* at 1088. Plaintiffs argued that BLM needed to perform a supplemental EIS as the original EIS had become stale and outdated. The Ninth Circuit determined that the major federal action at question, the approval of the operation, remained complete when the BLM approved the project. *Id.* at 1095. No ongoing major federal action existed to require NEPA supplementation. *Id.*

As an initial matter, it appears to the Court that Federal Defendants wrongly suggest that information about the Mainline Alternative route postdated the State Department's issuance of the Presidential Permit. In fact, TransCanada included the Mainline Alternative route as one of two alternatives in its February 16, 2017, application to the Nebraska PSC. (Doc. 104-1 at 12, 58-59.) The State Department knew, therefore, before it issued the Presidential Permit on March 23, 2017, that the Nebraska PSC potentially could approve the Mainline Alternative route. This contingency likely imposed an obligation on the Federal Defendants to supplement the EIS to reflect the Mainline Alternative route.

Regardless of this contingency, Federal Defendants now possess the obligation to supplement the EIS. The State Department retains discretion to

review any changes to the project that might arise after the issuance of the Presidential Permit. Federal Defendants argument that the Presidential Permit applies only to the segment of the pipeline at the border proves unpersuasive as the Presidential Permit states that that Keystone "must be constructed and operated as described in the 2012 and 2017 permit applications, the 2014 EIS . . . " Notice of Issuance of a Presidential Permit, 82 Fed. Reg. 16467-02 (Apr. 4, 2017).

The Court further determined in an earlier Order that the State Department remained obligated to comply with NEPA as it took final agency action when it published the ROD/NID for Keystone. The Court viewed the State Department's preparation of the NEPA analysis associated with Keystone as recognition of its legal obligations. (Doc. 99 at 14.) The Court specifically rejected TransCanada's contention that the Federal Defendants conducted the NEPA analysis for Keystone "as an act of grace." *Id.*

The Supreme Court has recognized an agency's obligation to prepare a post-decision supplemental EIS when a project has not been fully constructed or completed. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 367-72. The Supreme Court determined that "NEPA does require that agencies take a 'hard look' at the environmental effects of their planned action, even after a proposal has received initial approval." *Id.* at 374. *Marsh* stands in contrast to *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 72 (2004) ("SUWA"). The Supreme Court in

*SUWA* determined that the approval of a land use plan constituted a major federal action that required an EIS. *Id.* The major federal action remained complete, however, when the plan was approved. *Id.*

The Ninth Circuit addressed the distinction between *Marsh* and *SUWA* in *Cold Mountain v. Garber*, 375 F.3d 884 (9th Cir. 2004). The Forest Service issued a special use permit to the Montana Department of Livestock to operate a bison capture facility. Environmental groups alleged that the special use permit violated NEPA as new information emerged after the Forest Service had issued the special use permit. *Id.* at 891-92. The Ninth Circuit determined that the Forest Service possessed no ongoing oversight or involvement of the special use permit after its issuance. *Id.* at 894. There existed no ongoing major federal action. *Id.*

This case proves more akin to *Marsh*. Federal Defendants still retain a meaningful opportunity to evaluate the Mainline Alternative route. The Mainline Alternative route differs from the route analyzed in the EIS. The Mainline Alternative route crosses five different counties. The Mainline Alternative route crosses different water bodies. The Mainline Alternative route would be longer. The Mainline Alternative route would require an additional pump station and accompanying power line infrastructure. Federal Defendants cannot escape their responsibility under NEPA to evaluate the Mainline Alternative route. Federal Defendants first argued that it was too early to evaluate the Mainline Alternative

route before the approval of the Presidential Permit. They now argue that it remains too late to evaluate the Mainline Alternative route. NEPA requires a hard look. *Marsh*, 490 U.S. at 367-72.

The Court further agrees that Federal Defendants must address the Mainline Alternative route as it proves to be a "connected action" to the proposed action. Similar to *Thomas*, the Mainline Alternative route represents an interdependent part of the larger action of Keystone. *Thomas,* 753 F.2d at 759. The entire pipeline remains interrelated and requires one EIS to understand the functioning of the entire unit. Unlike *Salzar*, ongoing federal agency action remains. *Salazar*, 706 F.3d at 1095.

Federal Defendants have yet to analyze the Mainline Alternative route. Federal Defendants possess the obligation to analyze new information relevant to the environmental impacts of its decision. Other courts have recognized this obligation. *See Sierra Club v. Bosworth*, 465 F. Supp. 2d 931, 939 (N.D. Cal. 2006). In *Bosworth*, the court required a post-decision supplemental EIS for a timber harvesting project where the project had not been completed. *Id.* Federal Defendants' failure to supplement the 2014 EIS likewise violates its obligations under NEPA. *Thomas,* 753 F.2d at 759; *Bosworth*, 465 F. Supp. 2d at 939.

Plaintiffs further argue that Federal Defendants possessed the obligation to analyze Keystone under the ESA. (Doc. 140 at 17.) The ESA requires agencies to

analyze the site-specific impacts of proposed actions. Under Section 7 of the ESA, all federal "action agencies" must, "in consultation with" the Fish Wildlife and Service, "insure" that the actions that they fund, authorize, or undertake are "not likely to jeopardize the continued existence of any endangered species or threatened species" or "result in the destruction or adverse modification" of critical habitat. 16 U.S.C. § 1536(a)(2). The ESA requires agencies to evaluate which species or critical habitats are present in the "action area," which includes "all areas to be affected directly or indirectly by the Federal action." 50 C.F.R. §§ 402.02, 402.12(a). The Court will address the ESA argument in a future Order.

## CONCLUSION AND ORDER

1. Accordingly, IT IS ORDERED that Federal Defendants must supplement the 2014 final supplemental EIS to consider the Mainline Alternative route as approved by the Nebraska PSC.

2. The Court declines to vacate the Presidential Permit at this time. TransCanada has represented to the Court that construction of the pipeline will not begin until the second quarter of 2019. The Court directs Federal Defendants to file a proposed schedule to supplement the EIS in a manner that allows appropriate review before TransCanada's planned construction activities.

3. The Court will consider further remedies if circumstances change that do not allow review of the supplemental EIS before TransCanada's planned construction activities.

DATED this 15th day of August, 2018.

_/s/ Brian Morris_
Brian Morris
United States District Court Judge