Jeffery J. Oven                          Peter R. Steenland
Mark L. Stermitz                         Peter C. Whitfield
Jeffrey M. Roth                          Lauren C. Freeman
CROWLEY FLECK PLLP                       SIDLEY AUSTIN LLP
490 North 31st Street, Ste. 500          1501 K Street, NW
Billings, MT  59103-2529                 Washington, DC  20005
Telephone: 406-252-3441                  Telephone: 202-736-8000
Email: joven@crowleyfleck.com            Email:  psteenland@sidley.com
       mstermitz@crowleyfleck.com                pwhitfield@sidley.com
       jroth@crowleyfleck.com                    lfreeman@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK, *et al*., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.,* <br><br> Federal Defendants, <br> and <br><br> TRANSCANADA CORPORATION, *et al.*, <br> Defendant-Intervenors. | CV 17-29-GF-BMM <br><br> **DEFENDANT-INTEVENORS' REPLY IN SUPPORT OF MOTION TO AMEND THE COURT'S ORDER ON SUMMARY JUDGMENT** |

In its response to TransCanada's Motion for Clarification or Modification pursuant to Rules 59 and 60, Plaintiffs Indigenous Environmental Network, et al. ("IEN") depict a scenario involving alleged action by TransCanada that simply will not occur. IEN's fears and apprehensions about harm are vastly over-blown and misplaced. IEN's members will not be irreparably injured by the resumption of these activities, and the federal permitting process now underway will not be compromised by these interim, preparatory and reversible activities. Accordingly, TransCanada submits this reply in addition to the one filed in *Northern Plains Resource Council v. United States Department of State*, CV 17-31-GF-BMM (D. Mont.) to address the substantial inaccuracies in IEN's brief.

## ARGUMENT

IEN's alleged claims of irreparable harm pertain to the construction and operation of the Keystone XL Pipeline, not from the preconstruction activities described in paragraph 18 of the Norrie Ramsay Declaration (Doc. 222-1) (Paragraph 18 activities). Conversely, the harms to TransCanada from the broad injunction are significant. On balance, the hardships and public interest weigh in favor of clarifying that the injunction does not extend to the activities described in paragraphs 16-18 of the Ramsay Declaration.

**A.  IEN will not be irreparably injured if TransCanada is allowed to resume the Paragraph 18 Preconstruction Activities.**

In rebutting IEN's claims of injury, certain facts must be established.  First, despite IEN's numerous concerns about the impacts of mowing along the right-of-way, (Doc. 229 ("IEN Br.") at 14-17), TransCanada sought only to mow a portion of the right-of-way, that mowing has been completed, and did not involve any sites where threatened or endangered species were known to exist.  In sum, TransCanada mowed approximately 1,500 acres – roughly one-tenth of the area IEN represents in its brief.  TransCanada will perform no additional preconstruction mowing unless or until construction of Keystone XL is authorized.

Second, TransCanada proposes to grade – not clear – private land for pipe storage yards and worker camps.  Having kept the Court and the parties apprised of its earlier pre-construction activities, TransCanada can report that it has completed 11 pipe yards and needs to complete only 3 more for a total of 14 (7 in Montana and 7 in South Dakota).[1]  IEN also grossly mischaracterizes the size of these yards. They are approximately 161 acres in total.  The 3 remaining pipe yards to be prepared total only 35 acres.  This is significantly less than the 1,037.6 acres IEN

---

[1] In its reply to Northern Plains, TransCanada represented that it needed to prepare 2 remaining pipe yards.  Subsequently, it appears there are 3 pipe yards that TransCanada needs to complete. Of these 3 pipe yards, TransCanada began preparing 2 pipe yards, but stopped work when the Court issued an injunction.  One of these requires no more than some touch up work and laying down gravel.  The other requires grading and construction of dirt berms.  TransCanada has not begun work on the last of these 3 pipe yards.

represents will be impacted.  Additionally, the pipe yards are using approximately 3,000 cubic yards of gravel each, much less than the 7,000 cubic yards IEN alleges.

Third, TransCanada seeks the Court's approval to resume work on four leased sites on private land that it plans to grade, fence, and prepare for workforce housing and an associated contractor yard.  The four sites TransCanada seeks to prepare total approximately 225 acres, less than half of the 479 acres IEN contends would be impacted.  The closest these worker camps would be to the Cheyenne River Indian Reservation would be approximately 30 miles, which is farther than IEN implies.  Additionally, development of these areas does not result in the disturbance of every square inch of the land.  Instead, TransCanada would grade the land and prepared it in accordance with the permits issued by local governments.

Fourth, TransCanada has not proposed to conduct activities that IEN alleges would cause harm.  Accordingly, there will be no "planned open-burning clearing" in the right-of-way (indeed, no clearing of the right-of-way at all beyond the already completed mowing), no "[o]ff-right-of-way site clearing through open burning," and no "influx of workers to the[] work camps."  (IEN Br. at 20-22.)

Finally, TransCanada will not be "producing oil sands."  IEN suggests that there would be substantial greenhouse gas (GHG) emissions from the use of capital

equipment. (IEN Br. at 22.). In support, IEN cites an article that discusses GHG impacts associated with the use of equipment to extract oil in Alberta, Canada. DOS 12376 ("capital equipment and construction of facilities, machinery, and infrastructure *needed to produce oil sands*" (emphasis added)). That activity is not implicated here, and in fact is not part of the Keystone XL project. TransCanada does not produce any oil whatsoever.

The work that TransCanada proposes to do will not cause any irreparable injury to IEN or its members because none of the Paragraph 18 activities will produce permanent or long-lasting impacts. For the preparation of pipe yards, contractor yards and work camps, TransCanada seeks the Court's approval to continue to transport pipe, by rail and truck from mills to yards near the right-of-way. TransCanada also needs to transport worker camp modules and equipment to the worker campsites. As noted in TransCanada's reply to the Northern Plains Resource Council Plaintiffs, preparation of pipe yards, work camps and contractor yards would not require construction of private roads, would not cross or be in proximity to water bodies, and would not involve removal of any trees or any application of pesticides or herbicides. These areas have already been surveyed for protected species and cultural resources, none of which were found. Additionally, all sites will be fully restored and remediated at the conclusion of construction. *See* DOSKXL5979; DOSKXL5986; DOSKXL6937. This includes removing all

4

the gravel brought in for each site.  All state and local permits have been obtained for these proposed temporary activities. There will be no influx of workers to these camps beyond the modest set of 20-80 workers doing the preparation work unless and until construction on the pipeline is authorized.

What seems clear is that IEN equates ground disturbance with irreparable injury.  Perhaps, if TransCanada were proposing to drill for oil or gas, or to mine for some valuable mineral, IEN's concerns would have legitimacy.  But here, TransCanada is proposing the simple grading of private property, land that according to its permits and the 2014 Final Environmental Impact Statement (FSEIS), must be restored upon completion of the project.  If these proposed activities were truly irreparable, we would have noted two developments:  first, IEN would have raised objections to these actions when TransCanada first announced them to the Court and the Parties.  Second, IEN would be able to point to pipe yards and work camps that continue to mar the landscape from pipeline projects long concluded.  They have and can do neither because the work proposed here does not involve environmental harm, much less irreparable damage.   As such, the provisions of 40 C.F.R. § 1506.1 support TransCanada, not IEN.

### B. IEN Has a Remedy at Law

IEN contends it lacks a remedy at law to compensate for its injury.  This is not so.  The Court ordered the Department of State (State) to conduct additional

analysis under the National Environmental Policy Act (NEPA) to remedy the NEPA injuries IEN alleged.  NEPA is a purely procedural statute, accordingly the injuries to be remedied are procedural in nature. *See Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002) ("NEPA is a purely procedural statute. 'NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions.'").  Because none of the activities TransCanada seeks to undertake would prejudice the supplemental NEPA review ordered by the Court, there is no basis for IEN to claim that it lacks a remedy at law.

### C. The Balance of Hardships Tips in TransCanada's Favor

IEN cannot identify any harm from the Paragraph 18 activities that would be permanent or of long duration.  IEN has not complained of any activities that occurred prior to the injunction, and they have not identified any member that uses any of the areas where the limited preconstruction activities are scheduled to occur.

Conversely, TransCanada is *currently* experiencing harm from the injunction, which will be significantly compounded, and indeed irreparable, if the injunction remains in place.  The Court issued an injunction in the middle of TransCanada's preconstruction activities.  Though it was able to complete all preconstruction mowing, TransCanada was forced to pause its work related to the

preparation of pipe yards, contractor yards, and work camps.  If this work cannot continue, TransCanada will be forced to idle equipment and lay off workers. Ramsay Decl. ¶¶ 23-24.  The inability to perform preconstruction work will also give rise to much larger issues such as a significant construction delays and the attendant employment and financial impacts.  *Id.* ¶¶ 24-29.  These are not temporary impacts – the lost finances from delays do not reappear, the laidoff workers are not guaranteed to return, and the lost time from the delay does not get added back.

### D. The Public Interest Is Not Served by an Injunction

As TransCanada set forth in its briefing to this Court, the public interest factors weigh against an injunction.  *See* TransCanada's Motion at 11-12 (Doc. 222); TransCanada's Reply at 13-14 (Doc. 230, D. Mont. 4:17-cv-00031-BMM). As to the specific activities TransCanada seeks to continue here, the public interest is best served by allowing the approximately 700 employees working on these activities to keep their jobs contribute to our economy.  Ramsay Decl. ¶¶ 23-24. Given the minimal and completely reversible impacts from the Paragraph 18 activities, the public interest is not served by enjoining them.

IEN also claims that the public interest weighs against an injunction because the GHG impacts associated with the project will exacerbate the effects of climate change.  However, the GHG emissions associated with transporting oil are a

miniscule fraction of total global GHG emissions, and IEN fails to identify any fact

specific consequence of Keystone XL vis-à-vis climate change.  Moreover, the

GHG impacts associated with the preconstruction activities, which IEN contends

should be the focus of this analysis, are negligible. Thus, the public interest is not

served by an injunction.

## CONCLUSION

For the reasons stated in TransCanada's Motion and accompanying

memoranda in support, the Court should clarify that its injunction does not cover

activities identified in paragraphs 16-18 of Ramsay Declaration.

DATED this 7th day of December 2018.

> /s/ Jeffery Oven
> Jeffery J. Oven
> Mark L. Stermitz
> Jeffrey M. Roth
> CROWLEY FLECK PLLP
> 490 North 31st Street, Ste. 500
> P.O. Box 2529
> Billings, MT  59103-2529
> Telephone: 406-252-3441
> Email: joven@crowleyfleck.com
>       mstermitz@crowleyfleck.com
>       jroth@crowleyfleck.com
>
> /s/ Peter Steenland
> Peter R. Steenland
> Peter C. Whitfield
> Lauren C. Freeman
> Sidley Austin LLP
> 1501 K Street, NW
> Washington, DC  20005

Telephone: 202-736-8000
Email: psteenland@sidley.com
      pwhitfield@sidley.com
      lfreeman@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 1738 words, excluding caption and certificates of service and compliance, printed in at least 14 points and is double spaced, including for footnotes and indented quotations.

DATED this 7th day of December, 2018.

/s/ Jeffery J. Oven

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2018, a copy of the foregoing motion

was served on all counsel of record via the Court's CM/ECF system.

*/s/ Jeffery Oven*