**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

INDIGENOUS ENVIRONMENTAL NETWORK and NORTH COAST RIVER ALLIANCE,

and

NORTHERN PLAINS RESOURCE COUNCIL, et al.,

Plaintiffs,

vs.

UNITED STATES DEPARTMENT OF STATE, et al.,

Defendants

and

TRANSCANADA KEYSTONE PIPELINE and TRANSCANADA CORPORATION,

Defendant-Intervenors.

**CV-17-29-GF-BMM**

**CV-17-31-GF-BMM**

**SUPPLEMENTAL ORDER REGARDING PERMANENT INJUNCTION**

Plaintiffs Indigenous Environmental Network and Northern Plains Resource Council (collectively “Plaintiffs”) moved for summary judgment in this matter. (Docs. 139 & 145.) The United States Department of State (“Department”) and

TransCanada (collectively “Defendants”) filed cross motions for summary judgment. (Docs. 170 & 172.)

The Court granted Plaintiffs’ motions in part, and Defendants’ motions in part, in the Court’s Order on Plaintiffs’ and Defendants’ Motions for Summary Judgment (“Summary Judgment Order”). (Doc. 211.) The Court vacated the Department’s Record of Decision (“ROD”) issued on March 23, 2017. The Court granted Plaintiffs’ request for injunctive relief and remanded the matter to the Department for further consideration consistent with the Summary Judgment Order. *Id.* The Court entered Final Judgment was November 15, 2018. (Doc. 212.)

TransCanada moves the Court pursuant to Rule 59(e) and Rule 60(b) to amend the Court’s Summary Judgment Order, and Final Judgment. (Docs. 211 & 212.) TransCanada seeks clarification of the Court’s Orders to ensure certain preliminary project activities will not be enjoined. (Doc. 215.) Further, TransCanada asks the Court to evaluate the four factors required for issuance of a permanent injunction and narrowly tailor relief to address Plaintiffs’ purported injury. *Id.* at 10. Plaintiffs oppose TransCanada’s Motion. (Doc. 229.)

The Court held a status conference on November 28, 2018. (Doc. 222.) TransCanada set forth the activities that it seeks to continue in Paragraphs 16-18 of its expert declaration (hereafter “Ramsay Declaration”). (Doc. 216-1). The Court determined that Defendants could move forward with activities set forth in

Paragraphs 16-17 of the Ramsay Declaration. (Doc. 216-1.) The Court withheld ruling on the motion with regard to Paragraph 18 of the Ramsay Declaration until after Plaintiffs had submitted their responses to the motion. (Doc. 222.)

Plaintiffs filed their responses to the motion on December 5, 2018. Plaintiff Northern Plains Resource Council does not oppose conducting cultural, biological, civil and other surveys. Plaintiff Northern Plains Resource Council opposes the remainder of activities set forth in Paragraph 18 of the Ramsay Declaration. (Doc. 229 at 10-11.) Plaintiff Indigenous Environmental Network also does not oppose conducting cultural, biological, civil and other surveys. Plaintiff Indigenous Environmental Network further does not oppose maintain security at project sites. Plaintiff Indigenous Environmental Network opposes the remainder of activities set forth in Paragraph 18 of the Ramsay Declaration. (Doc. 229 at 8-9.)

## LEGAL STANDARD

Rule 59(e) allows a party to "alter or amend a judgment" by filing a motion within 28 days after entry of judgment. A court may alter or amend the judgment to address newly discovered evidence, correct clear error, prevent manifest injustice, or account for an intervening change in controlling law. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). District courts possess broad discretion to evaluate Rule 59(e) motions. *McDowell v. Calderon*, 197 F.3d 1253,

1256 (9th Cir. 1999). Further, Rule 60(b) allows a party to seek relief from final judgment for any reason justifying relief.

## DISCUSSION

The Court's Summary Judgment Order enjoined Defendants from "engaging in any activity in furtherance of the construction or operation of Keystone and associated facilities until the Department has completed a supplement to the 2014 SEIS that complies with the requirements of NEPA and the APA." (Doc. 211 at 54.) TransCanada requests that the Court amend the judgment to clarify that TransCanada may engage in preliminary project activities. TransCanada claims that the Court improperly issued a broad permanent injunction without analyzing the four requisite factors under *Monsanto Co. v Geerston Seed Farms*, 561 U.S. 139 (2010). TransCanada asserts that the language of the Court's Summary Judgment Order could be construed as enjoining certain preparatory activities and that the Court should tailor relief to address Plaintiffs' purported injury. (Doc. 216 at 10.)

TransCanada asks that the Court exclude preparatory activities defined in Paragraph 18 of the Ramsay Declaration. (Doc. 216-1.) Paragraph 18 sets forth activities including the following: cultural, biological, civil and other surveys; preparation of off-right-of-way pipe storage and contractor yards; transportation, receipt and off-loading of pipe at off-right-of-way storage yards; preparation of

sites for off-right-of-way worker camps; and mowing and patrolling areas of the right-of-way to discourage migratory bird nesting. The activities also include maintaining security at project sites to ensure public safety and maintaining environmental protections. *Id.* at 6-7. Plaintiffs do not argue that cultural, biological, civil and other surveys should be enjoined. Plaintiff Indigenous Environmental Network further does not contest maintain security at project sites. Plaintiffs argue the remainder of the proposed activities (hereafter "preconstruction activities") set forth in Paragraph 18 should be enjoined.

Before a permanent injunction may issue, a plaintiff must demonstrate that "(1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto*, 561 U.S. at 156-57.

## I. Irreparable Injury

Defendants assert that allowing the preconstruction activities set forth in Paragraph 18 will not cause irreparable harm to Plaintiffs. Plaintiffs argue that irreparable harm will occur in the form of environmental harm, and a "biased NEPA process." (Doc. 229 at 19.) Plaintiffs argue that allowing the Paragraph 18 preconstruction activities to proceed would perpetuate "bureaucratic momentum"

that would discourage other federal agencies from rejecting the project or altering its route to account for revised environmental review. *Id.* at 19-20.

The district court in *Colorado Wild Inc. v. U.S. Forest Serv.*, 523 F.Supp.2d 1213 (D. Colo. 2007), discussed the "biased NEPA process" theory. A private company applied to the Forest Service for rights-of-way across Forest Service land for access to the company's privately-owned land. *Id.* at 1217. The Forest Service determined that the proposal required the preparation of an EIS. *Id.* The Forest Service selected one of the alternatives that allowed construction activity on Forest Service roads. *Id.* at 1218.

The district court issued a temporary restraining order that prevented the Forest Service from authorizing construction on the roads or related activities. *Id.* at 1219. The district court later granted a preliminary injunction to halt the construction activity. The district court reasoned that the injury threatened did not involve merely ground-breaking disturbance. The district court recognized also the risk that the "bureaucratic momentum" created by the activities would bias the agencies NEPA analysis. *Id.* at 1220. This concern prompted the district court to curtail any further construction. *Id.*

The Fourth Circuit also analyzed the proper scope of an injunction related to an EIS in *Nat'l Audubon Soc'y v. Dept. of Navy*, 422 F.3d 174 (4th Cir. 2005). The Fourth Circuit agreed that the Department of Navy ("Navy") had had failed to

comply with NEPA in its decision to construct a landing field in North Carolina. *Id.* at 180-81. The Fourth Circuit continued its review, however, to include an analysis of the scope of the injunction ordered by the district court. The district court had issued a sweeping injunction that prohibited the Navy "from taking *any* further activity associated with the planning, development, or construction" of an air field without first complying with its obligations under NEPA. *Id.* at 202.

      The Navy asserted five areas of activities that should not have been enjoined. Navy first sought to conduct a site-specific wildlife assessment. *Id.* at 204. The studies would take over a year to complete and admittedly would go beyond the requirements of NEPA to include more intensive studies of the Navy's preferred site. *Id.* The Navy next sought to undertake activities preliminary to land acquisition. These activities would include property surveys and appraisals, title searches, relocation surveys and hazardous material surveys. *Id.* The Navy next sought to purchase land from willing sellers. These purchases would include existing purchase agreements that had been held in abeyance and some new agreements. *Id.* The fourth area of activity involved architectural and engineering work necessary for the planning and design of the air field. *Id.* Finally, the Navy requested permission to apply for permits that would be necessary before breaking ground on the project. *Id.*

The Fourth Circuit narrowed the injunction on appeal. The Fourth Circuit concluded that neither the site-specific activities, nor a "bureaucratic steamroller" would irreparably harm the plaintiffs. *Id.* at 205. The Fourth Circuit reasoned that the five activities identified by Navy "do not include cutting even a single blade of grass in preparation for construction." *Id.* at 207. The activities approved in *Nat'l Audubon Soc'y* sound similar to the activities in Paragraphs 16 and 17 of the Ramsay Declaration and previously authorized by this Court. (Doc. 222.) For example, Paragraph 16 discusses "detailed project engineering and conducting the extensive planning and related office work." (Doc. 216-1 at 6.) Paragraph 16 also includes "submitting reports and other administrative actions required to maintain compliance with valid state and local permits." None of these activities fall within the scope of the Court's previous Summary Judgment Order. (Doc. 211.)

The same reasoning applies to the activities proposed in Paragraph 17 (Doc. 216-1 at 6-7.) TransCanada seeks to "engag[e]" with external parties to pursue shipping contracts, pursue needed permits, "interfac[e]" with landowners and acquiring necessary land rights, "acquir[e]" pipe and materials, "inspect[] and refurbish[]" work camp modules and pipe, "engag[e]" with communities and various governmental entities, and "hir[e]" project staff and contractors. *Id.* These non-construction activities comport with the activities authorized by the Fourth

Circuit in *Nat'l Audubon Soc'y*, 422 F.3d at 205-06, and previously approved by this Court. (Doc. 222.)

This same reasoning applies to efforts identified by TransCanada in Paragraph 18 to conduct "cultural, biological, civil and other surveys." (Doc. 216-1 at 7.) The Fourth Circuit approved efforts to undertake site specific wildlife assessments that went beyond the requirements of NEPA to include more intensive studies of the Navy's preferred site. *Nat'l Audubon Soc'y*, 422 F.3d at 204. TransCanada may proceed with these type of preconstruction surveys. Nothing in the Court's original order on Summary Judgment (Doc. 211) or this Order, limits the ability of TransCanada to engage in "design, planning, and permit application[.]"

The remaining preconstruction activities proposed by TransCanada in Paragraph 18 generally differ, however, from those authorized by the Fourth Circuit in *Nat'l Audubon Soc'y*. The remaining activities contemplated by TransCanada in Paragraph 18 of the Ramsay Declaration include activities that go beyond "design, planning, and permit application[.]" *Nat'l Audubon Soc'y*, 422 F.3d at 206. The remaining activities proposed in Paragraph 18 include the preparation of pipe storage and contractor yards. (Doc. 216-1 at 7.) TransCanada also seeks to transport and store pipe near rights-of-way. *Id.* The work also would include the preparation of sites for the construction of worker camps and the

mowing and patrolling rights-of-way to discourage migratory bird nesting, and efforts to maintain security at project sites. *Id.* These proposed preconstruction activities, with the exception of maintaining a security presence, go beyond simply "integrating the NEPA process with other planning." *Nat'l Audubon Soc'y*, 422 F.3d at 206; 40 C.F.R. § 1501.2.

The preconstruction activities proposed in Paragraph 18 prove more analogous to those enjoined in *Colorado Wild*. The irreparable injury threatened by the Paragraph 18 preconstruction activities go beyond merely the ground-disturbing injuries alleged by Plaintiffs. These preconstruction activities raise the risk of the "bureaucratic momentum" recognized by the district court in *Colorado Wild*. TransCanada's proposed preconstruction activities could skew the Department's future analysis and decision-making regarding the project. *Colorado Wild*, 523 F.Supp.2d at 1221. As recognized by the Fourth Circuit in *Nat'l Audubon Soc'y*, CEQ regulations require that "no action concerning the proposal shall be taken which would: (1) [h]ave an adverse environmental impact; or (2) [l]imit the choice of reasonable alternatives" until an agency issues a record of decision. *Nat'l Audubon Soc'y*, 422 F.3d at 201 (quoting 40 C.F.R. § 1506.1(a)). No valid ROD has been issued here as the Court's Summary Judgment Order specifically vacated the ROD issued by the Department. (Doc. 211 at 54.)

Moreover, the Fourth Circuit premised its decision to narrow the scope of the injunction, in part, on the restriction in 40 C.F.R. § 1506.1(d). This subsection expressly provides that Section 1506.1(a) "does not preclude development by applicants of plans or designs or performance of other work necessary to support an application for Federal, State or local permits or assistance" while NEPA work is in progress. *Nat'l Audubon Soc'y*, 422 F.3d at 201. The activities proposed by TransCanada in Paragraph 18, with the exceptions of the surveys and maintaining a security presence, fall outside of "plans or designs or performance of other work" necessary to support permit applications protected by Section 1506.1(d).

## II.   Remedies Available at Law

"Environmental injury, by its nature, can seldom be adequately remedied by money damages." *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 545 (1987). Both parties assert that this element is not at issue in this case. The Court need not assess the adequacy of other remedies available at law under the second prong.

## III.   Balance of Hardships

Under the third prong, the Court must assess the "balance of hardships between the plaintiff and defendant." *Monsanto*, 561 U.S. at 157. The balance of hardships between the parties favors the Plaintiffs with regard to construction and operation of Keystone. Plaintiffs have demonstrated irreparable injury with respect to actual construction and operation of Keystone. *Monsanto*, 561 U.S. at 157.

TransCanada argues that hardship would occur if the Court were to halt Paragraph 18 activities. TransCanada cites jobs related to preconstruction activities, the potential of missing the 2019 construction season, and financial injury. TransCanada argues that preconstruction activities represent almost 700 American jobs. TransCanada further argues that delay in the project construction would result in lost earnings of approximately $949 million. Finally, TransCanada argues that delay in the construction schedule will impact contracts it has with third parties. (Doc. 216-1.)

Plaintiffs point to the temporary and self-inflicted nature of TransCanada's hardships. Plaintiffs argue further that environmental concerns outweigh TransCanada's alleged economic harms. The Ninth Circuit long has determined that "when environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Save Our Sonaran, Inc. v. Flowers*, 408 F.3d 1113, 1125 (9th Cir. 2005); *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) (economic harm if injunction issued does not outweigh potential irreparable damage to environment); *Northern Alaska Envtl. Ctr. V. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986) (more than pecuniary harm must be shown to outweigh environmental harm).

Environmental concerns with respect to the NEPA process outweigh TransCanada's pecuniary interest. Paragraph 16-17 activities, and Paragraph 18 survey activities required to supplement the EIS process, related tasks, and security efforts, will not be affected by the injunction. Other tasks related to Paragraph 18 activities, however, will be affected during the NEPA review process. This factor weighs in favor of a limited modification of the scope of the injunction.

**IV. Public Interest**

Fourth, TransCanada argues that a broad injunction would upset the public interest. "The public interest analysis involves weighing the importance of preserving the environment, following the rule of law, and avoiding environmental damage to the public against the economic interests of [Defendants]" *Mont. Envtl. Info Ctr. v. U.S. Office of Surface Mining*, 2017 WL 5047901, at *5 (D. Mont. Nov. 3, 2017). TransCanada argues that the Department's ROD and National Interest Determination ("NID") support the public's interest in the pipeline. (Doc. 216 at 12.)

TransCanada argues that the ROD/NID concluded that Keystone would support energy security, maintain relations with Canada, provide jobs, and boost the economy. The Court must balance economic interests of the Defendants, however, against potential environmental damage to the public. *See Mont. Envtl. Info Ctr.*, 2017 WL 5047901, at *5. NEPA relies on public disclosure of

information about potential environmental impacts to assure that the "most intelligent, optimally beneficial decision will ultimately be made." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1099-100 (9th Cir. 2010).

Plaintiffs have met their burden with regard to the public's interest in ensuring that the Department conduct a complete environmental review before construction and operation of Keystone. *Monsanto*, 561 U.S. at 157. The public possesses an interest in the Department's compliance with NEPA's environmental review requirements and informed decision-making. *See Colorado Wild*, 523 F.Supp.2d at 1222.

## CONCLUSION

The four-factor *Monsanto* test warrants an injunction. Plaintiffs have demonstrated that irreparable harm will result from the construction and operation of Keystone before full environmental review has been conducted, consistent with the Court's Summary Judgment Order. (Doc. 211.) Plaintiffs also have demonstrated that irreparably injury could occur if the following Paragraph 18 activities occurred:

    (1)    Preparation of off-right-of-way pipe storage and contractor yards;

    (2)    Transportation, receipt and off-loading of pipe at off-right-of-way storage yards;

(3)   Preparation of sites for off-right-of-way worker camps; and

(4)   Mowing and patrolling areas of the right-of-way to discourage migratory bird nesting.

Plaintiffs do not contend that the following Paragraph 18 activities should be enjoined, and the Court determines that they shall be permitted:

(1)   Cultural, biological, civil and other surveys; and

(2)   Maintaining security at sites.

## ORDER

**IT IS ORDERED** Defendants may conduct activities as defined in Paragraphs 16-17 of the Ramsay Declaration. (Doc. 216-1 at 6-7.) Further, Defendants may conduct cultural, biological, civil and other surveys, and may maintain security at project sites, as set forth in Paragraph 18 of the Ramsay Declaration. *Id.* at 7. All remaining preconstruction activities outlined in Paragraph 18 shall continue to be enjoined in accordance with the Court's Summary Judgment Order until the Department has complied with its NEPA and APA obligations and the Department has issued a new ROD. (Doc. 211.)

TransCanada's Motion to Amend (Doc. 215) is **GRANTED IN PART**. The injunction is narrowed in accordance with this Order. The remainder of the Court's

Summary Judgment Order (Doc. 211) and Final Judgment (Doc. 212), shall remain in full force and effect.

DATED this 7th day of December, 2018

Brian Morris
United States District Court Judge